[Crim. No. 5269. In Bank. Mar. 7, 1952.]

THE PEOPLE, Respondent, v. ROBERT GENE DESSAUER, Appellant.

548

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

CARTER, J.—Defendant pleaded not guilty and not guilty by reason of insanity to a charge of murder. After trial by the court sitting without a jury he was found sane and guilty of murder of the first degree and sentenced to death. His motion for a new trial was denied. The case is here on automatic appeal from the judgment and order denying the new trial.

Defendant, 28 years of age, and Libby Bershad, the victim of the homicide, had been living together as husband and wife since June, 1950, without legal sanction. Apparently one source of their income for a living embraced various activities, such as prostitution by Libby, bad check passing and the "badger" game, wherein she would entice a man into their living quarters and while they were in a compromising situation, defendant, posing as her husband, would enter demanding monetary satisfaction.

According to defendant's testimony in court, he and Libby

left their place of abode in Hollywood to do some shopping about 7 in the morning on April 2, 1951. After articles of apparel were purchased for Libby with cash and bad checks, they returned to Hollywood in defendant's car arriving about 2 in the afternoon. They stopped in front of a bank and Libby gave him a check to cash. He entered the bank to cash the check, but knowing it would not be paid, he got "cold feet" and returned to the car, taking a position in the rear seat, Libby being in front, where a discussion ensued in which he told her why he did not attempt to pass the check, and she told him he should not have been afraid. They did not have an argument or quarrel. He owned a gun which he had placed on the floor in front of the back seat of the car. While she was facing forward, he held the gun about 8 inches from the back of her head and shot four times, causing her death. He then left the car intending to surrender to the authorities. Not finding an officer he attended a theater for about an hour. He went to a restaurant where he made some notes on blank checks, and about 8 in the evening called the police. They came to the restaurant and took him into custody. He denied he had any intent to kill Libby before the shots were fired or that he purchased the gun to kill her. He said he shot her because she was in trouble and would eventually be imprisoned; he also said he had purchased the gun at Libby's suggestion for protection and to use in the "badger" games.

In a statement made to the officers, defendant stated that Libby and he had discussed suicide because they had nothing for which to live and she had attempted it several times; that he first decided to kill Libby about a month before the homicide "because she told me that life, as it was, wasn't worth living, she wasn't having a very good time, and neither was I, it was rough and unpleasant, and we saw no end in sight, a happy end"; because they were unhappy by reason of lack of money; that he purchased the gun for the "specific reason" of killing her; that he carried his plans to conclusion on the day of the homicide; and that he put the gun in his pocket on the morning of that day before they left their home with the thought of killing her.

█ Contrary to defendant's contention the evidence is adequate to establish first degree murder. His statement to the officers shows that he purchased the gun intending to kill Libby and carried out that intent. Clearly, there is sufficient evidence to show that murder was perpetrated by

a "willful, deliberate, and premeditated killing." (Pen. Code, § 189.) ▮ Defendant seems to think that because he said his motive was to have her die while she was happy the element of premeditation was eliminated. This does not necessarily follow, but even if it did, the court could have disbelieved that evidence. The killing could be found to be malicious, because ". . . malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Pen. Code, § 188.) ▮ Moreover, the establishment of a motive for the commission of a homicide is not indispensable to support a conviction. (*People* v. *Isby,* 30 Cal.2d 879 [186 P.2d 405]; 13 Cal.Jur. 685.)

▮ Further in this connection defendant urges that the statements of defendant to the officers could not be used to show the premeditation and deliberation sufficient to establish the crime of murder of the first degree; and that such must be proved by other evidence. If he is speaking of proof of the corpus delicti, there was adequate evidence aside from his extrajudicial statements to establish it. It will be recalled that there is evidence that he had the gun in the back of his car and when he returned to the car from the bank he entered the back seat rather than the front seat where Libby was seated. After a conversation with her and with no apparent provocation he aimed the gun at the back of her head and shot her four times. That is sufficient to indicate an intent to kill and proof of the corpus delicti aside from his extrajudicial statements. (See *People* v. *Corrales,* 34 Cal.2d 426 [210 P.2d 843]; *People* v. *Mehaffey,* 32 Cal.2d 535 [197 P.2d 12]; *People* v. *Stroble,* 36 Cal.2d 615 [226 P.2d 330].) If he means that his statements cannot be used in support of the proof of deliberation and premeditation, and hence, first degreee murder, he cites no authority so holding. His statements together with the other evidence clearly established deliberation and premeditation. (See *People* v. *Briggs,* 20 Cal.2d 42 [123 P.2d 433].) In *People* v. *Howard,* 211 Cal. 322 [295 P. 333, 71 A.L.R. 1385], relied upon by him there were no facts in the extrajudicial statement from which premeditation could be inferred. In *People* v. *Thomas,* 25 Cal.2d 880 [156 P.2d 7], the court was pointing out the closeness of the case

and hence the necessity for correct instructions on deliberation and premeditation. The admissions there made and other evidence are not comparable to this case.

Under a claim of denial of due process of law, defendant makes various contentions that the State's case was based on the transcript of the testimony taken at the preliminary hearing, and as to the sanity issue, on reports, rather than testimony in court, by alienists, containing sordid accounts of defendant's sex life, and that there was no confrontation of witnesses against him. Defendant was represented by counsel at the preliminary hearing and witnesses were cross-examined. He and his counsel waived a trial by jury on both the issue of guilt and insanity. His counsel at the opening of the trial stipulated that "the People's case may be submitted to the Court on the testimony taken at the preliminary examination; that the Court may read the transcript of that testimony to the same force and effect as though those witnesses were here, sworn and testified, the defendant waiving his right to further cross examination of those witnesses and waiving his right to be confronted by those witnesses, and any stipulations entered into at the preliminary hearing may be deemed entered into at this proceeding, and any exhibits received at the preliminary hearing may be received and marked as exhibits here." The use of doctors' reports was also stipulated, as will more fully appear later herein. ■ The right to be confronted by witnesses, whether assured by Constitution or statute, may be waived, and a trial may be had on the transcript of the evidence taken at the preliminary hearing on stipulation by defendant and his counsel (*People* v. *Wallin*, 34 Cal.2d 777 [215 P.2d 1]), or by the latter's stipulation, at least when made in defendant's presence. (*People* v. *Romero*, 100 Cal.App.2d 352 [223 P.2d 511]; *People* v. *Young*, 100 Cal.App.2d 488 [224 P.2d 46].) ■ It follows that the right to confront the doctors was also properly waived. Insofar as the admissibility of the reports is concerned that cannot be raised in the face of the stipulation. ■ A waiver or failure to object to the admission of evidence precludes objection on appeal. (8 Cal. Jur. 500 et seq.) In any event no prejudice has been shown. (See *People* v. *Stroble, supra,* 36 Cal.2d 615.)

After the prosecution had finished its case on the issue of guilt, the court called defendant's counsel's attention to the fact that the previous stipulations had not covered the doctors' reports on the issue of insanity. Defendant's counsel

then stipulated "that the Court may read and consider the reports of the doctors on the second issue of not guilty by reason of insanity. . . . [T]hat the Court may read and consider the reports of the doctors, Dr. Bielinski and Dr. Tucker, submitted as a result of their appointment under Section 1026 and following Sections of the Penal Code in determining the issue of the Defendant's plea of not guilty by reason of insanity. . . . And such other doctors' reports as may be submitted by either prosecution or defense." A report by a Dr. Bailey was submitted by defendant's counsel. The People then rested and defendant was called to the stand and testified. After defendant rested the State called a rebuttal witness. At the end of the case defendant's counsel stipulated that both issues, guilt and insanity, could be determined "at the one pronouncement." The court then found defendant guilty of murder of the first degree and sane. At the time of pronouncement of the sentence, defendant stood mute when asked if there was any legal cause why sentence should not be pronounced, and his counsel said there was no cause. The death penalty was imposed.

In that state of the record defendant contends that a reversal is required because the two issues were not tried separately, as required by the statute reading: "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty . . . then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court. In such trial the jury shall return a verdict either that the defendant was sane at the time the offense was committed or that he was insane at the time the offense was committed. If the verdict or finding be that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law." (Pen. Code, § 1026.) Defendant also contends that evidence was not taken to determine the penalty, that a jury was not summoned for that purpose and that those things could not be waived.

It is clear from the record that the manner of conducting the trial on the issues and determining the penalty was with the consent of defendant's counsel. He, at no time, made any objection to the procedure. He either tacitly or expressly assented. In regard to the penalty the court had all the facts surrounding the commission of the crime before it and also the reports of three doctors on defendant's mental status.

At least in a case tried by the court without a jury the right to have guilt and insanity separately tried may be waived. (*People* v. *Hazelwood*, 24 Cal.App.2d 690 [76 P.2d 151]; *People* v. *Pettinger*, 94 Cal.App. 297 [271 P. 132].) Those cases have not been disapproved, as claimed by defendant, by the later cases such as *People* v. *French*, 12 Cal.2d 720 [87 P.2d 1014], setting forth the procedure for separation of the trial of the two issues. Moreover, defendant has not shown he suffered prejudice. (*People* v. *Stroble, supra*, 36 Cal.2d 615.)

In regard to the determination of the degree and penalty it is settled that defendant's counsel may stipulate that they be determined on the evidence adduced at the trial. (*People* v. *Walker*, 33 Cal.2d 250 [201 P.2d 6]; *People* v. *Thomas*, 37 Cal.2d 74 [230 P.2d 351].) That is in effect the situation here.

In regard to the lack of a jury to determine the penalty to be imposed, defendant invokes section 190 of the Penal Code, which provides that persons guilty of first degree murder shall suffer death or life imprisonment at the discretion of the jury "trying the same." If any such right existed it was waived, as seen from the above discussion. Moreover, where the case is tried by the court after the jury has been waived we do not have a case within the language of section 190, that is, where the jury is trying it.

Defendant urges that the waivers should not be sustained because defendant's sanity was doubtful and he could not be expected to act intelligently. The alienists appointed by the court and the one chosen by defendant all agreed that defendant was sane at the time of the commission of the crime and when examined. The trial was had on July 18, 1951, and the reports of those doctors were dated July 16, May 29 and 27, 1951. From his testimony at the trial he appeared entirely rational.

Defendant contends that there was no showing that the statement he made to the police was free and voluntary.

There was no intimation or suggestion at any time during the trial that the statement was coerced in any respect. Defendant was questioned on direct examination in regard to the manner in which his statement was taken and no suggestion of coercion was mentioned. He testified that he told a different story to the police then and on the stand as to why he purchased the gun, to "obviate things," that is, because he thought the officers wanted him to answer that way or because of despondency.

 Defendant contends that the offense should be reduced by this court to second degree murder, or the penalty reduced to life imprisonment. The evidence, however, is, as we have seen, ample to establish first degree murder and no prejudicial error was committed by the trial court. This court has no power to reduce the degree of the crime or the penalty imposed in the absence of error, or to review the discretion of the trial court in fixing the penalty. (*People* v. *Odle,* 37 Cal.2d 52 [230 P.2d 345] ; *People* v. *Thomas,* *supra,* 37 Cal.2d 74 [230 P.2d 351].)

The judgment and order are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

Schauer, J., concurred in the judgment.

Appellant's petition for a rehearing was denied March 31, 1952.