[Crim. No. 5520. In Bank. Dec. 1, 1953.]

## THE PEOPLE, Respondent, v. HENRY FRANK DECAILLET, Appellant.

Thomas E. Reynolds, Public Defender (Yolo), for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SPENCE, J.—This is an automatic appeal from a judgment imposing the death penalty. (Pen. Code, § 1239.)

Defendant was accused of the murder of a 13-year-old girl, Phoebe Ann Bair, on June 11, 1953, in the town of Madison, Yolo County. Upon arraignment on June 22d, defendant stated that the public defender had represented him at the preliminary hearing but that he did not desire the

further services of counsel. The court, however, informed defendant of his rights and appointed the public defender to act as his counsel. Defendant refused to consult with his appointed counsel and submitted a plea of guilty. The public defender then moved to enter a plea of not guilty by reason of insanity, which the court entered upon refusing to accept defendant's guilty plea. The court thereupon named three alienists to examine defendant.

At a further hearing on July 1st, the public defender was appointed defendant's counsel at defendant's request and the court again informed defendant of his rights. Defendant's plea of guilty was thereafter accepted on that day. Being in doubt at that time as to defendant's sanity, the court ordered a hearing thereon on July 7th. Defendant refused a jury for such hearing and requested that the court determine the matter. On July 7th the three alienists testified and submitted their report, all agreeing as to the sanity of defendant both at the time of the murder and at the time of the entry of the guilty plea on July 1st. In accordance therewith, the court found defendant sane and referred the matter to the probation officer for pre-sentence investigation, fixing July 23d for the determination of the degree and the passing of sentence. At the July 23d hearing, several witnesses testified for the prosecution, various photographs of the interior and exterior of the Bair home were admitted in evidence, as also was defendant's voluntary statement of his guilt as previously given to the district attorney. Defendant offered no testimony in his own behalf. The court then fixed the crime as murder in the first degree, and imposed the death sentence.

Defendant, a farm laborer, was 51 years old at the time of the murder. He had an elementary school education. He had recently adopted the Pentecostal religion. At 23 he had married a girl 14, and there were five children born of the union. His wife and four children are living. Defendant and his wife were estranged about five years, and some three months before defendant committed the murder the family, at defendant's request, had moved to other quarters.

According to defendant's own statement, he had been in love with the deceased 13-year-old girl for a number of months and had had several acts of sexual intercourse with her. As the result of a warning from the constable, he had stopped these acts sometime prior to Thanksgiving in 1952. Thereafter, the girl had refused to talk to him and he became

jealous, believing that "she was messing around with some boys" in the town. On the evening of June 11, 1953, he went to the Pentecostal Church, where he saw the deceased at the meeting but she refused to talk to him. He then left the church, drove a short distance to the Bair home and parked his car about 300 yards from the house. He then walked to the house and entered, carrying a .22 caliber rifle. He had been carrying the rifle in his car for about three weeks and had admittedly determined to stop the girl from leading such an immoral life and to shoot both her and himself, if need be, to carry out his purpose. When defendant arrived at the Bair home, the deceased's sister, two of her brothers and two other boys were there. When they saw defendant with the gun, they immediately left for the constable's home, to tell him of defendant's presence at the Bair home.

About 9:45 p. m. the girl arrived home from church with her parents. The parents, thinking that the deceased's sister should have been with them and that she probably was still at church, returned to the church to look for her. They left the deceased at home, telling her to get ready for bed. Defendant was standing hidden in a closet in the Bair home. As the deceased was standing near the refrigerator in the kitchen, defendant shot through a crack in the door, wounding her in the head. The deceased thereupon started to run toward the front door; but defendant grabbed her, shot her again in the head and then twice more. The deceased's father returned in time to see through the window the last part of the shooting; and he testified at the hearing. When arrested, defendant was sitting on the davenport with the girl's head cradled in his left arm and the rifle held in his right hand. He had removed the deceased's shoes and panties, but there was no evidence of recent intercourse. A doctor was immediately called and he pronounced the girl dead. Defendant was arrested by two deputy sheriffs in the Bair home about 10:30 p. m.; he made no resistance and readily admitted the killing.

Defendant had previously been a heavy drinker and had once spent four months in the Mendocino State Hospital as an inebriate. In recent months religion had come into his life and he felt that he had to stop the deceased girl's immoral life. He gave up his drinking and stated that he was completely sober at the time he killed the deceased. The affair was common gossip in the town; defendant had been giving the deceased money for her attentions; and her parents had hesitated about taking any legal action against defendant be-

cause they all belonged to the same church. Defendant stated that he knew that it was wrong to kill, both morally and legally, and that he should forfeit his life for his crime; that he realized what he was doing when he killed the deceased, and that his act was premeditated for at least three weeks.

Defendant's opening brief merely reviews the circumstances leading up to the determination of the degree of the crime and the fixing of the penalty. No claim of error is made. In fairness to defendant's counsel, it should be stated that he was placed in the difficult position of representing a man who had planned and executed the brutal killing of a young girl, had freely admitted his guilt at all times, had insisted on entering a plea of guilty, and had reconciled himself to paying the extreme penalty without any request for leniency. The record shows that both court and counsel carefully protected every right of defendant at all stages of the proceedings, and that the evidence amply sustains the finding of murder of the first degree on any one of three grounds: a murder committed as a wilful, deliberate and premeditated act (*People* v. *Dessauer,* 38 Cal.2d 547 [241 P.2d 238]; *People* v. *Martinez,* 38 Cal.2d 556 [241 P.2d 224]); a murder perpetrated by lying-in-wait (*People* v. *Thomas, ante,* p. 470 [261 P.2d 1]; *People* v. *Sutic, ante,* p. 483 [261 P.2d 241]); a murder committed in the perpetration of an act punishable under Penal Code, section 288. (Pen. Code, § 189.)

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.