[Crim. No. 17391. Second Dist., Div. Five. Aug. 31, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LILLIAN MAY ATKINS, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert F. Katz, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—Defendant was charged by information with one count of burglary. (Pen. Code, § 459.) She pleaded not guilty. Jury trial was waived. Defendant stipulated that the court might consider the transcript of the preliminary hearing plus such additional evidence as the parties chose to present. Defendant was found guilty of second degree burglary. Probation was denied. Defendant was sentenced to the county jail for six months. She appeals from the judgment.

At approximately 6:20 a.m., April 11, 1969, Officer Trout of the Long Beach Police Department was dispatched to Pier E to investigate a telephone complaint from a Mrs. Atkins that she had been molested and had had her car stolen. The car was described as a red Ford, license N T B 378. En route to Pier E, Trout saw the Ford parked under a bridge. The car was empty, but its lights were on. Trout saw a television set on the rear floorboard of the car. The set was partially covered by a jacket but Trout could see the words "Monterey Motel No. 1" on the top and "Monterey Motel" on the side of the set. Trout left his partner at the car and proceeded to Pier E. There he was told by the parking attendant that the woman who had called the police had left in a car with three sailors. Trout then returned to the Ford and there found defendant talking with his partner.

Trout asked defendant why she had called the police. She stated that she had picked up a sailor the night before and had spent the night with him at a motel, that while she was driving him back to the base that morning he had gotten fresh so she had gotten out of the car at Pier E and the sailor had taken the car. She had then hitched a ride to town with three sailors, but on the way had seen her car parked under the bridge and returned to it.

Trout asked defendant if she knew anything about the television set in her car. She said that the sailor she had picked up had it with him. The officer asked if defendant had noticed any markings on the set or anything

unusual about it. She stated that she had been intoxicated the night before and remembered very little about what her companion had with him. Trout asked defendant if she had any keys to the car. She said, "No, just the ones that were in there." Trout then walked to the trunk. There was a crack where the trunk had been sprung. Using a flashlight, Trout was able to see into the trunk through the crack. He observed a second television set, also marked "Monterey Motel."

Defendant was then placed under arrest and advised of her constitutional rights. When asked if she understood her rights she replied affirmatively. When asked if she wished to waive her rights she said, "No." Trout asked no further questions, but took defendant to the police station. There during booking a card was found in defendant's purse with the names of Officer Summers and Sergeant Shea of the Commercial Burglary Detail on it. When defendant saw the card she stated, "Those are the only officers I am going to talk to."

On the morning of April 13, 1969, Officer Summers went to the women's jail to speak to defendant. He had been told by one of the arresting officers that defendant had said she would speak only to him or to Sergeant Shea. Summers advised defendant of her constitutional rights. He then asked if defendant wished to talk to him about the burglary of the Monterey Motel. Defendant said that she had an attorney and did not wish to discuss the burglary. Summers asked her no further questions about it. He held a short conversation with her on an unrelated matter and then left.

Shortly after Summers left, defendant asked Kathryn Swan, a matron at the jail, to call Summers because defendant wanted to talk to him. Mrs. Swan telephoned Summers. He returned to the jail that afternoon and again advised defendant of her constitutional rights. Defendant stated that she understood her rights but that she wanted to talk to Summers to clear things up.

Defendant told Summers that she had gone to the motel with a male companion, that after he left, she took the television set from their room and placed it in her car. She then went into another room, took another set, placed it in her car and left the motel. She then went downtown, met a sailor in a bar and drove with him down to the pier where the problem which led to her calling police developed.

The manager of the Monterey Motel testified that the television sets found in defendant's car had been taken from the motel without permission. She could not identify defendant as having been at the motel.

*Contentions on Appeal*

Defendant contends that her confession to Officer Summers was coerced and that her exculpatory (but possibly implicating) statement to Officer Trout was made prior to her being advised of her constitutional rights and therefore was inadmissible.

■ Defendant testified on the issue of the admissibility of her confession. She admitted that she had been advised of her constitutional rights and that she had requested to speak to Officer Summers. She claimed, however, that she discussed the burglary with Summers because he told her that he had a male suspect in custody for the crime and was about to arrest a second male suspect whose marriage would be destroyed if his wife learned about the incident. Summers denied making any such statements. Mrs. Swan testified that she was present during Summers' first conversation with defendant and that while she did not pay close attention to what was said, she heard nothing said about any other suspects. The court chose to believe the officer's version of what transpired.

■ While it is true that once a defendant indicates a desire to speak to an attorney,[1] all questioning must stop (*People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625]), police officers are not precluded from later speaking with a defendant who changes his mind and voluntarily and on his own initiative seeks to discuss the matter with officers. (*People* v. *Brockman,* 2 Cal.App.3d 1002, 1007 [83 Cal.Rptr. 70]; *People* v. *Sunday,* 275 Cal.App.2d 473, 479-480 [79 Cal.Rptr. 752].)

■ As defendant points out, there is a heavy burden on the People to prove a waiver of constitutional rights. (*Miranda* v. *Arizona,* 384 U.S. 436, 475 [16 L.Ed.2d 694, 724, 86 S.Ct. 1602, 10 A.L.R.3d 974].) We believe that the People met that burden here.

■ Despite defendant's contention to the contrary, corroboration of the officer's testimony is not an essential element of that burden. (*People* v. *Baxter,* 7 Cal.App.3d 579, 582-583 [86 Cal.Rptr. 812].) ■ Moreover, not only was Officer Summers' testimony partially corroborated by Mrs. Swan, but it was also corroborated in many essential respects by defendant. Resolution of the issue posed by the discrepancies between defendant's story and that of Summers was properly a matter for the trial court. ■ Although *Miranda* states that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege" (384 U.S. at p. 476 [16 L.Ed.2d at p. 725]), we understand the court to mean by that; *any evidence*

---

[1]Here, defendant's position was that she had an attorney and did not wish to talk.

*believed by the trial court.* No other interpretation would be practicable. (*People* v. *Gonzales,* 24 Cal.2d 870 [151 P.2d 251].)

 Defendant testified that she confessed not only because of her concern for other alleged suspects, but also because Summers told her that if she cooperated, the judge and her parole officer would be so apprized, and if she did not, this too would be brought to their attention. Summers was not asked specifically if he made such statements, so this testimony was not expressly contradicted. The officer did testify, however, that at his first meeting with defendant, he had no conversation with her about the case except to advise her of her constitutional rights. He also testified that he had related to the court everything which he had said to defendant during their second conversation. "Everything," of course, did not include anything concerning a promise to bring defendant's cooperation, or lack thereof, to the attention of the judge, the parole officer, or anyone else.

The trial court's conclusion that Summers' version of the facts was the correct one and its decision to admit defendant's statement in evidence clearly imply disbelief of defendant's testimony with respect to Summers' alleged promises, as well as his alleged comments concerning other suspects. Her statement to Summers was properly admitted in evidence.

 Defendant further contends that her statements to Officer Trout were inadmissible because they preceded any advisement of her constitutional rights. On the facts before us, we do not believe that her statements resulted from in-custody interrogation prohibited by *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].[2] But in any event, we do not believe that this is a proper issue for consideration on appeal. At the preliminary hearing, Officer Trout testified concerning defendant's statements to him. Defense objections to this testimony were overruled. At the time of trial, the parties agreed that the court could read

---

[2]This case, despite its somewhat bizarre facts, presents in almost classic form the dilemma faced by police officers in the field. If they investigate too long, they risk running afoul of the proscriptions of *Miranda* v. *Arizona, supra;* if they arrest too soon, they face the prospect that evidence will be excluded under the rule of *Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]. We believe that the arresting officers herein managed to tread that midline in a reasonable manner. Officer Trout testified that when he first saw the television set in defendant's car, he suspected that it might have been stolen, but that since defendant had telephoned police and reported the theft of her car, there was some doubt in the officer's mind as to who else had been in possession of the car who might have placed the set there. He, therefore, rightly felt that he did not have grounds to take defendant into custody at that point. Thus, he was not then obliged to advise defendant of her constitutional rights. Rather, Trout gave defendant the opportunity to explain the presence of the set, if she could. When the officer found the second set which had not been mentioned by defendant in her explanation, he was justified in concluding not only that a burglary had been committed, but that defendant was implicated in its commission. (*People* v. *McFarland,* 58 Cal.2d 748, 754, 755 [26 Cal.Rptr. 473, 376 P.2d 449].)

the transcript of the preliminary hearing, pursuant to the following stipulation:

"MR. SHELDON [District Attorney]: The People offer to stipulate that the Court may read and consider the testimony taken at the preliminary hearing, up to Page 26 of the preliminary hearing transcript, with the same force and effect as if those witnesses, Wanda Hobbs and John Trout, had been duly called, sworn, and testified, the same way they testified at the preliminary hearing, here at the defendant's trial.

"We further offer to stipulate that any stipulations entered into at the time of the preliminary hearing and any exhibits entered at that time be deemed entered into and entered before this Court, subject to all legal objections, both sides reserving the right to put on additional testimony.

"MR. AID [Defense Counsel]: So stipulated, although I would also stipulate the entire transcript be considered by the Judge. I'll stipulate to that."

The stipulation was clearly in two parts: the first related to the acceptance of the testimony given at the preliminary hearing as though given at the trial; the second related to stipulations and exhibits made and entered at the preliminary hearing as being made and entered at the trial. It was only as to the second part that there was the reservation of "subject to all legal objections." Were it not for this clear distinction, we would again be faced with the same problem as was present in *People* v. *Griffin,* 250 Cal.App.2d 545 [58 Cal.Rptr. 707]. Once more it appears proper to quote what we there stated (at p. 549): "We strongly recommend that in these cases where there is a submission on the preliminary transcript, the stipulation be phrased in such a way that the record is not booby-trapped with possibilities for error in matters to which the attention of the trial court is never directed." (See also *People* v. *Marquez,* 259 Cal.App.2d 593, 602, fn. 2 [66 Cal.Rptr. 615].)

While Officer Summers and Mrs. Swan thereafter testified, Officer Trout was never called to the stand. Defense counsel argued extensively concerning the admissibility of defendant's statements to Officer Summers, but raised no question in regard to Officer Trout's recorded testimony. Under these circumstances, defendant may not now successfully argue that the case should be reversed because of statements whose admissibility was not contested at the time of trial. If defense counsel had wished to preserve the objections to Officer Trout's testimony, he could have followed the simple expedient of defense counsel in *People* v. *Andrews,* 234 Cal.App.2d 69, 77 [44 Cal.Rptr. 94]: ". . . . The actual words of the deputy district attorney and of defendant's counsel were as follows: 'MR. REAGOR: . . . It is my understanding that Mr. McDonnell [defendant's attorney] wishes to

stipulate, as do I, that this matter be submitted to this Court on the basis of the Preliminary Hearing transcript, each side reserving the right to produce additional witnesses. Is that correct, Mr. McDonnell? MR. McDONNELL: Yes, with the further stipulation, of course, that it be understood that all objections raised by the Defense during the preliminary examination are, of course, raised for the purpose of this trial. . . .' "

As the court there observed, "This method of procedure is not novel in California." ▇ In the absence of such a reservation of objections, the familiar rule that a waiver or failure to object to the admission of evidence precludes objection on appeal must prevail. (*People* v. *Dessauer,* 38 Cal.2d 547, 552 [241 P.2d 238].) ▇ In the absence of any objection to the preliminary hearing transcript, the court must have assumed that defendant wished it to consider all testimony in that transcript.

The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.