[Crim. No. 28404. Second Dist., Div. Two, Aug. 4, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY LEE INGRAM, Defendant and Appellant.

**COUNSEL**

Allan M. Rosenthal, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FLEMING, J.**—Henry Lee Ingram appeals the judgment after conviction in a court trial for grand theft from the person (Pen. Code, § 487, subd. 2) with the finding of a prior robbery conviction. Ingram contends (1) the evidence fails to support the grand theft conviction, and (2) he was not properly advised of his rights and the consequences of his submission of the case in part on the transcript of the preliminary hearing.

### FACTS

The prosecution offered to submit its case for grand theft on the transcript of the testimony given by the witnesses at the preliminary hearing in lieu of calling those witnesses a second time to repeat their testimony. Ingram was advised of his rights to trial by jury and to confront and cross-examine witnesses. Ingram said he understood those rights and that he would agree to waive them by agreeing to the use of the transcript as evidence of the witnesses' testimony and that he would testify in his own defense. The prosecutor advised Ingram further:

"[Prosecutor] And it is also your understanding that this is a contested matter. That is not the equivalent of a guilty plea. You're maintaining your innocence and your attorney is going to argue for your innocence just as I'm going to argue for your guilt. Do you understand that? [Ingram] Yes. [Prosecutor] And it will be up to the court to decide whether he's convinced beyond a reasonable doubt that you are guilty or that he has a reasonable doubt. And, therefore, you're entitled to acquittal. Do you understand that? [Ingram] Yes."

At the preliminary hearing, Lewis Love testified that on the night of 28 September 1975 he was waiting for a bus in front of the Cecil Hotel on South Main Street in Los Angeles. Love had his wallet, which contained $51 and a medical card, in his hand. A man ran up and took the wallet from him. Love chased the thief through an alley and across a parking lot near the Greyhound bus station. He lost sight of the thief, but when he arrived at the bus station the police had handcuffed someone, and they returned his wallet to him.

Los Angeles Police Officer John White testified that he was standing in front of the bus station when he saw Love chasing Ingram. Love shouted,

"Help, help, stop him, stop him." When White stepped out of the shadows, Ingram turned, ran to the passenger side of a taxicab, and crouched down behind the open door of the cab. Officer White apprehended Ingram and found Love's wallet on the front seat of the cab.

Jessie Wilson testified that he was sitting in the front passenger seat of his taxicab when Ingram ran up and tried to say something to him. Officer White asked Wilson to get out of the cab, and when he did Wilson saw a wallet lying on the front seat. The wallet had not been there before.

At trial, Ingram testified in his defense and denied he took the wallet from Love. He explained he was standing in the parking lot behind the Seville Hotel when two men ran past, neither of them Love. One of the men dropped a wallet. Ingram and another man standing nearby raced over to the wallet. Ingram got there first, picked up the wallet, and trotted across the street in front of the bus station. When he saw a police officer walking towards him, he turned, and walked to a cab and threw the wallet towards the cab.

## DISCUSSION

1. ■ Ingram contends the evidence fails to support his conviction for grand theft from the person because it does not show he was the man who took the wallet from Love. At most, he argues, the evidence shows he possessed a stolen wallet which he threw away when he sighted a police officer.

This contention is without merit. ■ The prosecution may rely on circumstantial evidence to connect the defendant to the crime and establish beyond a reasonable doubt his commission of the crime. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) ■ Although Love could not identify the thief, he testified that he chased the man who took his wallet toward the bus station. Officer White saw Love chasing Ingram toward the bus station. Ingram admitted he had the wallet and threw it in the direction of the taxicab, where it was found by Officer White. From these circumstances it was reasonable for the trial court to infer that Ingram took Love's wallet. The logic is simple and clear: Love chased the thief; Ingram was the man chased by Love; therefore, Ingram was the thief.

2. █ Ingram also contends he was not properly advised of his rights and the consequences of his agreement to accept the transcript of the testimony given at the preliminary hearing as evidence of the witnesses' testimony at the trial.

This contention is technically correct. *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086], holds that "in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination. It shall also demonstrate that he understands the nature of the charges. Express waivers of the enumerated constitutional rights shall appear. In cases in which there is to be a submission without a reservation by the defendant of the right to present evidence in his own defense he shall be advised of that right and an express waiver thereof taken. If a defendant does not reserve the right to present additional evidence and does not advise the court that he will contest his guilt in argument to the court, the defendant shall be advised of the probability that the submission will result in a conviction of the offense or offenses charged. In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute, registration requirements, if any (e.g., § 290; Health & Saf. Code, § 11590), and, in appropriate cases the possibility of commitment pursuant to Welfare and Institutions Code sections 3050, 3051, or 6302." Technically, there was *Bunnell* error here, because of defendant's agreement to accept the preliminary hearing transcript as proof of the testimony of the witnesses at the preliminary hearing. Ingram was not advised of and did not waive his right against self-incrimination nor was he advised of the range of punishment for grand theft with a prior robbery conviction.

The remaining issue is whether this error was prejudicial. (*People* v. *Fisk* (1975) 50 Cal.App.3d 364, 371 [123 Cal.Rptr. 414].) We think not. The missing advisements are made mandatory by judicially declared rules of criminal procedure which apply to all agreed uses of the transcript of the preliminary hearing as evidence at the trial of the facts charged in the accusation. (See *In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 516].) As explained in *Bunnell*, at page 605, the Supreme Court adopted these rules to simplify appellate review of submissions on transcripts: "The distinction heretofore established between submissions that are 'tantamount to a plea of guilty' and those in which the defendant actively contests his guilt has also unnecessarily

burdened trial courts with the task of attempting to determine in advance of the acceptance of the submission whether guilt is apparent, acknowledged, or contested. We have concluded that in order to relieve trial courts of this burden and in order to give maximum assurance that defendants are fully aware of the significant rights that they surrender in any submission and of the possible consequences thereof, such defendants shall be fully advised of these rights and consequences and that the record shall reflect such advice, waivers, and acknowledgment by the defendant of his understanding of these consequences in all submissions."

The submission here was plainly not tantamount to a plea of guilty. Advice on the privilege against self-incrimination and on the range of possible punishment would not have affected Ingram's decision to accept the submission of the transcript of the preliminary hearing as the equivalent of live testimony, since he intended to take the stand and deny he was the man who took Love's wallet. Ingram never sought to challenge the truth of the testimony of the prosecution witnesses; instead he hoped to reconcile their testimony with his own explanation for possession of Love's wallet. Ingram did testify on his own behalf, and thus directly waived his privilege against self-incrimination. He could not reasonably have been expected to understand that submission of the prosecution's case on the transcript somehow amounted to a further and different waiver of his privilege against self-incrimination. And, no practical purpose would have been served by advising Ingram of the range of punishments on conviction since he already was doing all he could through the presentation of a comprehensive defense in order to avoid conviction. We conclude that absence of the required advisements did not produce a miscarriage of justice. (Cal. Const., art. VI, § 13.)

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 29, 1976.