[Crim. No. 2710. Fifth Dist. May 31, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
EVERETT BARRY SMITH, Defendant and Appellant.

COUNSEL

Daniel T. Dauenhauer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GARGANO, J.—By information appellant was charged with murder in violation of section 187 of the Penal Code.[1] Appellant stipulated to submit his case to the court for decision on the basis of the reporter's transcript of the preliminary hearing; he was found guilty of murder in the first degree. Appellant was sentenced to state prison for the term prescribed by law. His appeal raises three main contentions for reversal: that the trial judge failed to inform appellant that his stipulation to submit his case to the court for decision on the transcript of the preliminary hearing was tantamount to a plea of guilty; that the murder prosecution was precluded by appellant's prior robbery conviction since the same transaction played a significant part in both offenses; and that the court lacked the power to sentence appellant on the murder conviction because he still was serving a sentence on his robbery conviction.

On the evening of December 27, 1974, Larry Tanksley walked into a liquor store in Fresno, California, with a .38 caliber snub-nosed pistol with the intent to rob. The liquor store was owned by Thomas Kubota and gunfire was exchanged between the robber and the proprietor; Tanksley was fatally wounded and he died at the Valley Medical Center a few hours later. Kubota, though seriously injured, did not die immediately. However, due to a coronary insufficiency caused by arteriosclerosis, and due to the lowering of blood pressure associated with the shock caused by the bullet wound, blood was unable to reach Mr. Kubota's heart and he suffered a myocardial infarction moments

---

[1] Unless otherwise specified all statutory references are to sections of the Penal Code.

after he was wounded.[2] He died nine months later on September 25, 1975, after suffering acute and chronic heart failure caused by the strain placed on his heart as a result of not having enough living muscle tissue in the heart to keep it functioning properly.

After the attempted robbery, the police discovered that appellant and one Tex McDonald also were involved in the crime; appellant was placed under arrest and taken to the Fresno police station where he gave a confession.

Appellant told the police that several days before the attempted robbery of Kubota's liquor store, Tanksley and two other men came to his house and asked him if he knew where they could obtain a pistol. A couple of days later appellant took Tanksley and Tanksley's two friends to the house of Johnny Coronado; when they discovered that Coronado was not at home, appellant and Tanksley broke into the house and stole Coronado's .38 caliber snub-nosed pistol. That night appellant, Tanksley and the two other men held up a liquor store in Cedar Heights. A few days later on the evening of December 27, 1974, Tanksley, appellant and Tex McDonald drove to Fresno in a car belonging to McDonald's wife; they located Kubota's liquor store and parked the car a couple of blocks away. McDonald went inside the liquor store to look the place over; when he returned to the car he told Tanksley that "it looked pretty good." Tanksley went into the liquor store with the pistol, and appellant and McDonald waited in the vehicle. A short time later, McDonald and appellant saw numerous police cars heading toward the liquor store; they drove away in Mrs. McDonald's automobile.

On April 17, 1975, the District Attorney of Fresno County filed an information in the superior court of that county (superior court action No. 28908-A) charging appellant with burglary and armed robbery; appellant entered a plea of guilty to first degree robbery and the burglary count was dismissed. On June 18, 1975, appellant was sentenced to state prison on the robbery conviction.

On November 7, 1975, the present action was commenced when an information was filed in the superior court charging appellant with the murder of Kubota. Then appellant moved to enter a plea of former

---

[2]A myocardial infarction is a condition involving the death of a portion of the muscle tissue of the heart due to lack of blood reaching the heart itself.

judgment of conviction and to dismiss the information on that ground; the motion was denied.

On February 27, 1976, appellant submitted the murder charge to the court for decision on the transcript of the preliminary hearing. The court found him guilty of murder in the first degree and sentenced appellant to prison for the term prescribed by law. In imposing the sentence the trial judge directed that the sentence previously imposed on the robbery conviction in Fresno County Superior Court action No. 28908-A be stayed pending the finality of the present judgment on the murder conviction and service of sentence as to that conviction, the stay to become permanent when service of the sentence is completed.[3] The court also gave appellant full credit for time served on the robbery conviction.

■ We consider first appellant's contention that the trial judge committed prejudicial error when he failed to tell appellant that his stipulation submitting his case to the court for decision on the basis of the reporter's transcript of the preliminary hearing was tantamount to a plea of guilty.

In January 1970, the California Supreme Court extended the *Boykin* requirements (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]) on guilty pleas, as interpreted in *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], to a stipulation submitting a criminal case to the court for decision on the transcript of the preliminary hearing, if under the circumstances of the particular case the submission was ". . . *in fact* tantamount to a plea of guilty . . . ." (Original italics.) (*In re Mosley* (1970) 1 Cal.3d 913, 926, fn. 10 [83 Cal.Rptr. 809, 464 P.2d 473].) As a consequence, it was incumbent upon the trial judge to determine in advance whether the submission amounted to a guilty plea and, if so, to make certain that the record showed that the defendant had waived his right to a jury trial, his right to confront and cross-examine witnesses, and his privilege against self-incrimination.

On February 27, 1975, the California Supreme Court concluded that the distinction it had drawn between submissions which were tanta-

---

[3] We note that after judgment was pronounced in the instant action a corrected abstract of judgment was entered in Fresno County Superior Court action No. 28908-A (the robbery conviction) reflecting that further execution of the sentence therein was stayed pending the finality of the present judgment on the murder conviction and service of sentence as to the murder conviction, such stay to become permanent when service of the sentence on the murder conviction is completed.

mount to pleas of guilty and those which were not, posed an unnecessary burden on the trial judges of this state. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].) The court abandoned the distinction by adopting an all-inclusive mandatory formula in the form of an admonition to be given by the trial judge in every case where a defendant charged with a criminal offense decides to submit his cause to the court for decision on the transcript of the preliminary hearing. Briefly, the court stated: " . . . in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination. It shall also demonstrate that he understands the nature of the charges. Express waivers of the enumerated constitutional rights shall appear. In cases in which there is to be a submission without a reservation by the defendant of the right to present evidence in his own defense he shall be advised of that right and an express waiver thereof taken. *If a defendant does not reserve the right to present additional evidence and does not advise the court that he will contest his guilt in argument to the court, the defendant shall be advised of the probability that the submission will result in a conviction of the offense or offenses charged.* In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute, registration requirements, if any (e.g., § 290; Health & Saf. Code, § 11590), and, in appropriate cases the possibility of commitment pursuant to Welfare and Institutions Code, sections 3050, 3051, or 6302." (Italics added.) (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, 605.)

There is, of course, no merit to appellant's position that the court erred in failing to inform appellant that the submission in question was tantamount to a plea of guilty; this requirement is not and never has been the law of this state. Nevertheless, the record shows that before stipulating to the submission, appellant did not reserve the right to present additional evidence. The record also shows that neither appellant nor his counsel advised the court that appellant's guilt would be contested in argument to the court. Thus, the Attorney General commendably calls our attention to the *Bunnell* decision and concedes that the trial judge was obligated to inform appellant that his stipulation to submit his case for decision on the transcript of the preliminary hearing *probably* would result in a conviction of the offense charged. ■ The Attorney General argues that the judge substantially complied with the Supreme Court's mandate when he told appellant,

". . . the Court, under this pleading, could find you guilty of murder in the first degree; and if that's what the finding of the Court is, the punishment is imprisonment for the rest of your life."

We hesitate to hold that the requirements of *Bunnell* were met in the case at bench. The statement to which the Attorney General alludes in support of his position that the trial judge told appellant that the submission of the case for the court's decision on the transcript of the preliminary hearing probably would result in a conviction was made after the judge was prepared to accept the submission and when he was reminded by defense counsel that he was required to explain to appellant the range of punishment that could be imposed as a result of a conviction. When the trial judge told appellant that he could find him guilty of first degree murder "under this pleading," the judge merely was referring to the direct consequences of a conviction under the charge specified in the information; he was not alluding to the probability of a conviction resulting from the testimony contained in the transcript of the preliminary hearing. The trial judge's remark taken in context only informed appellant that the accusatory pleading charged appellant with murder and that under that pleading the court could find appellant guilty of murder in the first degree and sentence him to life imprisonment. It does not seem to us that the trial judge's statement adequately warned appellant that the submission of his case for decision on the testimony taken at the preliminary hearing probably would result in a conviction of first degree murder.

But this does not end our inquiry. As we have indicated, in *In re Mosley, supra,* 1 Cal.3d 913, 926, footnote 10, the California Supreme Court extended the *Boykin* requirements (*Boykin* v. *Alabama, supra,* 395 U.S. 238) on guilty pleas, as interpreted in *In re Tahl, supra,* 1 Cal.3d 122, to a stipulation submitting a criminal case to the trial court for decision on the testimony taken at the preliminary hearing, if under the circumstances of the particular case the submission was tantamount to a plea of guilty; the court reasoned that under such circumstances the stipulation was, for all practical purposes, a plea of guilty and that the *Boykin* admonition was mandated by the Constitution. However, this requirement imposed upon the trial judges of this state the difficult burden of determining in advance whether a stipulation to submit a criminal case for decision on the transcript of the preliminary hearing was in fact tantamount to a plea of guilty; it was to relieve the trial judges of this burden that the high court adopted the *Bunnell* formula. (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, 605.)

Further, as we have indicated, under the *Bunnell* opinion, in all cases in which the defendant seeks to submit his case for decision on the transcript of the preliminary hearing, he must, among other things, be advised of his constitutional right to a jury trial, to confront and cross-examine witnesses and against self-incrimination. In addition, if, as here, the defendant does not reserve his right to present additional evidence and does not advise the court that he will contest his guilt in argument, he shall be advised of the probability that the submission will result in a conviction of the offense or offenses charged; this latter requirement stems from a judicially declared rule of criminal procedure and is a precautionary admonition which is not constitutionally compelled. (See *Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, 605; *People* v. *Ingram* (1976) 60 Cal.App.3d 722, 726 [131 Cal.Rptr. 752].) Accordingly, though error occurs if the additional admonition is not given, the error does not require reversal where the record clearly demonstrates that prejudice did not occur from the omission. (*People* v. *Ingram, supra,* 60 Cal.App.3d 722, 726-727; see also *In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561]; *People* v. *Killman* (1975) 51 Cal.App.3d 951, 958 [124 Cal.Rptr. 673].)

Returning to the facts of this case, we note that appellant's complicity in the *robbery* which resulted in the shooting of Kubota was indisputable. Appellant had confessed to participating in the robbery; he admitted his prior involvement with the gun that was used by Tanksley and that he accompanied Tanksley and Tex McDonald to the liquor store and waited in the car while Tanksley entered the store; he pleaded guilty to the armed robbery.

We also note that ultimately appellant's sole strategy of defense was to rest on the proposition that he neither could be prosecuted nor punished for the murder because he already had been convicted and sentenced for the armed robbery. Trial counsel obviously knew that the evidence of appellant's complicity in the robbery was insurmountable. As a consequence, at the preliminary hearing, counsel extensively cross-examined the People's medical witness in an unsuccessful effort to prove that Kubota's death, though related to his bullet wounds, was proximately caused by the decedent's refusal to take his medication. Later, after the arraignment at which appellant entered a plea of not guilty to the murder charge, trial counsel made a motion to enter a plea of former judgment of conviction and to have the information dismissed for that reason; he vigorously argued that section 654 precluded the murder prosecution and that in any event a sentence on that conviction while

appellant still was serving a sentence on the robbery conviction amounted to multiple punishment. Then, when the motion was denied, the court, at defense counsel's request, extended the trial date on the murder charge to give the attorney and his medical expert time to analyze and evaluate both previously known and recently discovered medical records relating to the cause of Kubota's death. It was only after that analysis and evaluation was completed that appellant entered into the stipulation to submit the cause for the court's decision on the transcript of the preliminary hearing and then appealed from the adverse judgment relying primarily on the multiple prosecution and multiple punishment issues for reversal.

In summary, it is clear from the record that appellant was well aware that his submission on the transcript of the preliminary hearing would result in a first degree murder conviction and that his only hope was to prevail, on appeal, on the multiple prosecution and the multiple punishment issues. It is equally clear that no practical purpose would have been served by advising appellant that the submission probably would result in a first degree murder conviction.

■ We turn to appellant's contention that section 654 precludes the present prosecution for murder because appellant previously had pleaded guilty to first degree robbery and was serving his sentence on that conviction. Both offenses were the product of the same act or course of criminal conduct, and in this connection section 654 provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

It is true that section 654 precludes multiple prosecutions for crimes where the same act or course of conduct plays a significant part in each offense (*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206]); the section is a "procedural safeguard against harassment" (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 21 [9 Cal.Rptr. 607, 357 P.2d 839]; accord *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 825). But exceptions are made where, at the time of the first proceeding, the prosecutor either was reasonably unaware of the offense he was seeking to prosecute in the second proceeding (see *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 828) or where he had no election to make at that time since material circumstances pertinent to the second

proceeding were not susceptible of discovery in time to avoid multiplicity problems (see *In re Dennis B.* (1976) 18 Cal.3d 687, 693 [135 Cal.Rptr. 82, 557 P.2d 514]; *People v. Snipe* (1972) 25 Cal.App.3d 742, 749 [102 Cal.Rptr. 6]; *People v. Breland* (1966) 243 Cal.App.2d 644, 651 [52 Cal.Rptr. 696]). For example, in the case of *People v. Snipe, supra,* 25 Cal.App.3d 742, as in this case, the victim was not dead when the first proceeding was culminated. There, as here, the defendant initially was convicted of a less serious offense, the victim died several months thereafter and the defendant then was charged with murder. We held that the second prosecution was not precluded by section 654 even though both crimes arose out of the same act or course of conduct because the prosecutor had no election to make at the time he initially prosecuted the defendant and obtained the conviction for the less serious offense. (*Supra,* 25 Cal.App.3d at p. 749.)

█ Next, appellant suggests that it was error for the trial court to sentence him on the murder conviction while he still was serving a prison sentence on the robbery conviction. Appellant contends that the multiple punishment proscriptions of section 654 prohibit punishment for both the robbery conviction and the murder conviction, that the trial court lacked jurisdiction to stay the robbery sentence since he already was serving that sentence (see e.g., *People v. McAllister* (1940) 15 Cal.2d 519, 526 [102 P.2d 1072]; *People v. Clinton* (1966) 243 Cal.App.2d 284, 288 [52 Cal.Rptr. 221]), and that accordingly appellant could not be sentenced to any penalty on the murder conviction.

Admittedly, the sentencing of a defendant who stands convicted of the greater offense arising from the same act or course of criminal conduct that resulted in an earlier conviction of a lesser offense during the time when he still is serving a sentence on the lesser one, presents a unique and perhaps difficult problem; the judgment as to the first conviction is final and arguably the trial court has no jurisdiction to suspend the sentence as to that judgment in order to avoid the prohibition of section 654 against multiple punishment. Stated in another manner, because the imposition of the sentence in appellant's prior robbery conviction is final, it is arguable that the trial court did not have the power to adopt the procedure delineated in *People v. Niles* (1964) 227 Cal.App.2d 749, 756 [39 Cal.Rptr. 11], in order to circumvent the statutory proscription against multiple punishment. However, such a holding would give rise to an anomolous situation. It could also contravene the equal protection clause of the United States Constitution. This is true because whether a person *could be sentenced* for the greater offense would depend upon

whether he had completed his sentence on the lesser one. (See *People* v. *Breland, supra,* 243 Cal.App.2d 644; *People* v. *Snipe, supra,* 25 Cal.App.3d 742, 749.)[4]

We believe that the solution to the problem is found in section 654 itself and in the fact that the rule that a trial court may not modify a final judgment is not absolute; the rule is subject to statutory and judicial exceptions. (*People* v. *Behrmann* (1949) 34 Cal.2d 459, 462 [211 P.2d 575].) As we have stated, section 654 does not preclude the prosecution of a defendant for a greater offense arising out of the same act or course of conduct for which a prior conviction on a lesser offense was obtained if the prosecutor, as in this case, had no election to make at the time of the initial prosecution since material circumstances pertinent to the second proceeding were not susceptible of discovery in time to avoid multiplicity problems. (See *In re Dennis B., supra,* 18 Cal.3d 687, 693; *People* v. *Snipe, supra,* 25 Cal.App.3d 742, 749; *People* v. *Breland, supra,* 243 Cal.App.2d 644, 651.) Yet the section still prohibits multiple punishment under those circumstances. Consequently, when the second conviction is obtained, section 654, by necessary implication, authorizes the trial judge to modify the judgment in the first conviction in order to stay the execution of the sentence as to that conviction to avoid multiple punishment; such a modification is tantamount to an order after judgment resulting from a fortuitous circumstance arising after the first judgment was entered.[5]

Appellant's remaining points are frivolous and will not detain us.

He argues that the People's medical expert was not qualified to express an opinion as to the cause of Kubota's death because he admitted that he only had a minimal knowledge of cardiology; the expert's qualifications were not challenged in the court below and cannot be challenged for the first time on appeal. (See *People* v. *Dessauer* (1952)

---

[4]For example, in *People* v. *Breland, supra,* 243 Cal.App.2d 644, the accused fully served the sentence imposed on the lesser offense before sentence was imposed on the greater offense.

[5]In discussing this very problem, a footnote in an article in the Yale Law Journal on the subject of double jeopardy stated: "A comparable problem arises where the defendant has been tried for an offense such as assault, but subsequent events alter the nature of the offense, i.e., the victim dies of injuries inflicted during the assault. A subsequent trial for manslaughter should not be permitted unless the trial for assault resulted in a conviction. If the defendant is then convicted of manslaughter the unserved segment of his sentence for assault should be vacated and the segment already served should be credited toward his sentence for manslaughter." (Note (1965) 75 Yale L.J. 262, 291, fn. 132.)

38 Cal.2d 547, 552 [241 P.2d 238]; *People* v. *Atkins* (1970) 10 Cal.App.3d 1042, 1049-1050 [89 Cal.Rptr. 588].)

Appellant maintains that as a result of the bullet wound, Kubota was rendered a paraplegic and that he had diabetes and other ailments. He suggests that maybe one of these factors caused the decedent's heart to stop beating. Appellant's suggestions are grounded upon speculation, not medical evidence. There was substantial evidence to support appellant's conviction. (See *People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

Appellant alleges that his confession was the product of an illegal arrest and a *Miranda* violation. These points were not raised in the court below and cannot be raised for the first time on appeal.

Appellant relies upon *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361] to claim that he was denied due process of law because a blood sample of Kubota's blood was not taken at the time of his death; he asserts that the blood sample might have proven that the decedent died because he stopped using the drug digitalis. This issue, likewise, was not raised in the court below and cannot be urged for the first time on appeal.

The judgment is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied. July 28, 1977.