74 Cal.App.3d 460 (1977)
141 Cal. Rptr. 519
THE PEOPLE, Plaintiff and Respondent,
v.
PAUL NOEL HARWOOD, Defendant and Appellant.
Docket No. 30129.
Court of Appeals of California, Second District, Division Four.
October 28, 1977.
*462 COUNSEL
Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Karen R. Smith and Paul D. Fogel, Deputy State Public Defenders, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Susan L. Frierson, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
JEFFERSON (Bernard), J.
By information, defendant Harwood was charged with offering to sell, on July 22, 1976, cocaine, a controlled substance, in violation of Health and Safety Code section 11352, subdivision (a).
Defendant entered a plea of not guilty. His motion to suppress evidence, made pursuant to Penal Code section 1538.5, was denied. Thereafter, defendant withdrew his plea of not guilty and entered a plea of guilty as charged.
Criminal proceedings were suspended; defendant was granted probation for five years, on condition (among others) that he serve six months in the county jail and pay a fine of $1,000. Defendant was declared ineligible for county parole.
Defendant has appealed from the judgment of conviction. We reverse.
*463 On July 22, 1976, at approximately 8 p.m., one Roger Brown was arrested a block from his residence, 383 Gladys, No. B, Long Beach, for selling cocaine. Shortly thereafter, Judith Marshall approached several police officers standing near the Gladys residence. After conversation, it was determined that Judith was sharing the Gladys apartment with Roger Brown.
Police Officer Donald Smith, one of the officers in conversation with Judith, told her that there might be cocaine or money from a previous cocaine sale by Brown located in the apartment on Gladys. When Brown was apprehended he had no cocaine on his person. Smith asked Judith for consent to search the apartment for cocaine and money; he further advised her that she did not have to give permission for the search, but that if she did not, an attempt would be made to secure a search warrant.
Judith Marshall was on probation at this time for selling marijuana. She knew that she had a small stash of marijuana in the Gladys apartment, but was fairly certain a search would not turn up cocaine. She was primarily intent on concluding her contact with the officers so that she could address herself to securing Brown's release on bail. Judith told the assembled officers about the marijuana, and was assured there would be no difficulty about that. She orally consented to the search.
Judith permitted the officers to use her key and five police officers were admitted to the small one-bedroom apartment. Judith testified that the telephone rang; that she reached to answer it, but was stopped from doing so by Officer Smith, who picked up the phone. Officer Smith testified that he could not recall how many telephone calls were received before he intercepted calls from Paul Harwood, the present defendant. Judith testified that she objected to the interception of phone calls to the premises. But, Officer Smith, when asked whether Judith in any manner objected to his answering the telephone, stated that "[s]he made no statements to any objection that I know of."
While the record is not entirely clear, it appears that at least two incoming telephone calls were answered by the officers after entrance into the apartment, and before Judith signed the written consent form for the search. The document entitled "Consent to Search" was handed to Judith by Officer Smith. That document, which Judith read before signing, provided for "a complete search of the premises or vehicle under my control"  and was duly executed by Judith.
*464 About 9 p.m. the phone rang again. By this time the search of the apartment was completed, and had revealed no cocaine. Officer Smith answered the phone, for the purpose, he testified, of ensuring the safety of the searching officers. Smith then believed that Roger Brown had been selling cocaine and that the telephone caller might be involved in a transaction with Brown. In the ensuing conversation, Smith identified himself as a friend of Roger's, and ascertained that he was speaking to someone named Paul (the present defendant, Harwood), who told him he had a pound of something to sell. Paul stated that he would have to determine whether the substance he had in mind was still available, and that he would call back in 10 minutes. Paul did call again, and said he would be by the Gladys address in 15 or 20 minutes. Later, defendant Harwood appeared at the apartment and, after discussing price and amount, handed Officer Smith an envelope containing what Smith believed was cocaine. Defendant was then arrested; this was about 11 p.m.
Defendant makes three contentions on this appeal.
The first relates to defendant's "standing" to make a constitutionally-based objection to Officer Smith's seizure of incoming telephone calls to the Brown-Marshall apartment on Gladys.
(1) California long ago adopted the broad application of the exclusionary rule, allowing those affected by an allegedly unconstitutional search and seizure from a third person to challenge its legality in a court of law. (People v. Martin (1955) 45 Cal.2d 755 [290 P.2d 855].) Subsequent efforts to alter application of the vicarious exclusionary rule have been rejected. (Kaplan v. Superior Court (1971) 6 Cal.3d 150 [98 Cal. Rptr. 649, 491 P.2d 1].) In Shuey v. Superior Court (1973) 30 Cal. App.3d 535, 542 [106 Cal. Rptr. 452], it was explained that "in California we enforce the exclusionary rule for its deterrent effect, disregarding nice questions of standing with respect to the particular defendant who moves to suppress. Our view is not so much that we come to the aid of particular persons who are victimized by illegal law enforcement, but that the victim of the illegality is the judicial process itself."
The decisional law, therefore, compels the conclusion that defendant Harwood may challenge the legality of the police officer's interception of telephone calls made by him to the Brown-Marshall premises and his resultant conviction of selling cocaine.
*465 Defendant's second contention relates to his assertion that the record of the suppression-of-evidence hearing, while concededly establishing that the initial search of the Gladys apartment was based on Judith Marshall's consent, also contains uncontroverted evidence that she communicated to the searching officers her objections to their answering her telephone, and that these objections constituted an effective withdrawal of the prior consent.
The record reveals somewhat conflicting evidence on this point. We cannot reweigh it. (People v. Superior Court (Keithley) (1975) 13 Cal.3d 406, 410 [118 Cal. Rptr. 617, 530 P.2d 585].) By ruling that the search was conducted within the realm of constitutional permissibility, the trial court inferentially rejected Judith Marshall's version of events, including her claimed withdrawal of consent. We are bound by that determination. (People v. James (1977) 19 Cal.3d 99 [137 Cal. Rptr. 447, 561 P.2d 1135].) However, as the ensuing discussion will show, whether or not Judith made known to the searching officers her objection to their intercepting telephone calls to her apartment was immaterial under the circumstances presented here.
(2a) Defendant's primary contention is that the searching officers extended their intrusion at the Gladys apartment beyond the consent given, thereby violating defendant's right to be free from unreasonable search and seizure, guaranteed by the United States Constitution (Fourth Amendment) and the California Constitution (art. I, § 13).
While these constitutional guarantees preclude warrantless searches such as this one, there are recognized exceptions to the constitutional limitations, and a consensual search is one of them. (Schneckloth v. Bustamonte (1973) 412 U.S. 218 [36 L.Ed.2d 854, 93 S.Ct. 2041]; People v. Leib (1976) 16 Cal.3d 869 [129 Cal. Rptr. 433, 548 P.2d 1105].) By consenting to a warrantless search, one waives a constitutionally protected right.
It was cogently stated in Blair v. Pitchess (1971) 5 Cal.3d 258, 274 [96 Cal. Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], that "one may waive his Fourth Amendment right to be free from unreasonable searches and seizures. [Citations.] However, it `cannot be overly stressed that the protections embodied in the Fourth Amendment are so fundamental that they are to be jealously guarded and liberally construed.' [Citation.] `It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do *466 not presume acquiescence in the loss of fundamental rights." ...' [Citation.]" Blair also tells us that "[w]here government officials rely on consent to justify the lawfulness of a search, the burden is on them to show by clear and positive evidence that the consent was freely, voluntarily and knowledgeably given. [Citations.]" (Blair, supra, 5 Cal.3d 258, 274.)[1]
Similarly, it is the government's burden to prove that a warrantless search was within the scope of the consent given. People v. Superior Court (Arketa) (1970) 10 Cal. App.3d 122, 127 [89 Cal. Rptr. 316], states: "The authority to search pursuant to a consent must be limited to the scope of the consent." In People v. Cruz. (1964) 61 Cal.2d 861, 866 [40 Cal. Rptr. 841, 395 P.2d 889], it was held that a general consent to search particular premises did not include consent to pry into particular items located on the premises but which belonged to third persons (suitcases and boxes).
Other instances where the scope of consent has been limited may be found in the decisional law. In People v. Bracamonte (1975) 15 Cal.3d 394 [124 Cal. Rptr. 528, 540 P.2d 624], the searchers possessed a warrant authorizing personal search of the defendant, but were precluded from extending that search to bodily intrusion. The Bracamonte court stated that "a search, even if justified at its inception, may be unconstitutional by virtue of its intolerable intensity and scope." (Id. at p. 404.) There was also a search warrant in Lohman v. Superior Court (1977) 69 Cal. App.3d 894 [138 Cal. Rptr. 403], but the officers exceeded the scope of authorized search by entering onto premises not specifically identified in the warrant.
(3) Thus, despite initial authorization  whether by warrant, probable cause, or consent  police officers may exceed the boundaries of the power conferred upon them and create illegality for their actions. Limitations may exist due to the specifications of the warrant (Lohman) or by constitutional mandate (Chimel v. California (1969) 395 U.S. 752 *467 [23 L.Ed.2d 685, 89 S.Ct. 2034]), or, in the case of consensual search, by the mutual understanding and reasonable expectations of the parties.
In United States v. Dichiarinte (7th Cir.1971) 445 F.2d 126, government agents had been told by defendant that they could search his home for narcotics. Once inside, however, the agents searched through the personal papers of defendant, who thereafter was charged with income tax evasion. The court stated: "A consent search is reasonable only if kept within the bounds of the actual consent. [Citation.] In the case before us the defendant's consent set the parameters of the agents' conduct at that which would reasonably be necessary to determine whether he had narcotics in his home." (Dichiarinte, supra, 445 F.2d 126, 129-130; fn. omitted.) It was concluded that reading through defendant's personal papers "was a greater intrusion into defendant's privacy than he had authorized and the fourth amendment requires that any evidence resulting from this invasion be suppressed." (Id. at p. 130; fn. omitted.)
(4) A principle to be adhered to and encouraged is stated in Dichiarinte as follows: "Courts have not looked with favor on the practice of substituting consent for the authorization of a search warrant. The Supreme Court, in Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), stated that `police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure.'" (Id. at p. 129, fn. 1.) Allegiance to this principle was set forth in United States v. Arrington (7th Cir.1954) 215 F.2d 630, 637: "It is high time that courts place their stamp of disapproval upon this increasing practice of federal officers searching a home without a warrant on the theory of consent, particularly where no reason is shown why a search warrant was not obtained." The same sentiment is expressed in Catalanotte v. United States (6th Cir.1953) 208 F.2d 264, 268, in these words: "We have noted with disapproval the growing tendency on the part of police officers to be very quick on the trigger in construing  and acting upon their construction  a statement of some known offender as an invitation to search his premises."
(2b) The situation in Dichiarinte was not unlike that in the case at bench. Here, there was an understanding between Judith and the police officers that her premises would be searched for cocaine and money. The scope of the consent to search was thus a limited one. Here, the officers exceeded that scope by the interception of telephone calls to the premises. There is absolutely nothing contained in the oral or written *468 manifestation of Judith's consent to suggest that telephone interceptions were to be included.
The Attorney General contends that the interception of incoming calls in the case at bench falls squarely within People v. Sandoval (1966) 65 Cal.2d 303 [54 Cal. Rptr. 123, 419 P.2d 187]. But Sandoval is not at all like the instant case. In Sandoval, the search of a defendant's premises was based  not on consent  but on probable cause with information from the district attorney that rendered incoming telephone calls reasonably suspect as involving narcotic transactions. The Sandoval holding that the officers could justifiably answer the telephone is based on the dual premise that the search was based on probable cause and information imparted to the searching officers that incoming telephone calls were likely to constitute a part of illegal narcotic transactions being conducted by the occupant in this manner. Sandoval cannot be construed as a holding that every right to make a premises search  whether based on probable cause or consent  includes the right to intercept incoming telephone calls.[2]
In the case at bench, all that the officers suspected about the Gladys apartment was that there still was contraband in the premises and possibly some proceeds from a prior sale of cocaine. This was the designated purpose revealed to Judith and the basis upon which her consent to search was sought. Had the officers had any reason to believe that Roger Brown normally conducted his narcotic transactions after telephone calls to his residence, they might have sought from Judith a broader consent to include the interception of phone calls. But they neither had any such information nor did they secure any such broader consent.
We hold, therefore, that neither a general consent to search particular premises nor a consent to search for specific items includes the right to intercept telephone calls to the premises involved. In the instant case the arrest of defendant for offering to sell cocaine and the obtaining of cocaine from defendant were the direct result of the constitutionally *469 illegal actions of the police in answering the telephone at the Gladys apartment. Defendant's motion to suppress should have been granted.
The judgment is reversed.
Kingsley, J., concurred.
FILES, P.J.
I concur in the judgment upon the ground that the search exceeded the reasonable expectations of the person consenting.
Respondent's petition for a hearing by the Supreme Court was denied January 4, 1978.
NOTES
[1] In James, supra, the California Supreme Court observed that in a warrantless search, "the burden was on the People to establish justification under a recognized exception to the warrant requirement. [Citation.]" (19 Cal.3d 99, 106.)

The James court also fixed this burden of proof as one to be established by a preponderance of the evidence and made reference to the fact that the "clear and positive evidence" language used in Blair was meant to emphasize the importance and distinctiveness of this burden of proof  to be discharged by a preponderance of the evidence. (James, supra, 19 Cal.3d 99, 106, fn. 4.)
[2] We are also cited to People v. Warner (1969) 270 Cal. App.2d 900 [76 Cal. Rptr. 160] and People v. Pompei (1968) 267 Cal. App.2d 581 [73 Cal. Rptr. 163], both of which are cases which involved bookmaking and searches of the premises based upon reasonable cause to suspect bookmaking operations by means of the telephone. Neither of these cases is determinative of the case at bench, as neither involved consensual search.