[Crim. No. 42917. Second Dist., Div. Five. July 20, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN VANVALKENBURGH, Defendant and Appellant.

COUNSEL

Harland W. Braun and Edward J. Horowitz for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HASTINGS, J.—In an information filed by the Los Angeles County District Attorney, appellant was charged in count I with possession of cocaine for sale (Health & Saf. Code, § 11351), in count II with possession of LSD tablets for sale (Health & Saf. Code, § 11378), in count III with cultivation of marijuana (Health & Saf. Code, § 11358) and in count IV with possession of hashish (Health & Saf. Code, § 11357, subd. (a)). Appellant initially pled not guilty, but after his motion to suppress evidence (Pen. Code, § 1538.5) was denied, he changed his plea to guilty as to count I, and the remaining counts were dismissed in the interests of justice. In May 1982, appellant was sentenced to the low term of two years in state prison. He appeals the judgment of conviction contending that the court erred in denying his motion to suppress. We affirm the judgment.

FACTS

On September 25, 1980, Los Angeles County Sheriff's deputies went to appellant's Malibu home in response to a call complaining of a prowler on the property. Deputies failed to locate any prowlers, but they did observe eight to ten containers, each of which contained several marijuana plants. One of the officers, Deputy Lofthus, relayed his observations to Deputy Wenig, a narcotics officer, who obtained a warrant to search the home.

On September 26, 1980, Deputies Wenig and Hutton went to appellant's home to serve the warrant. Appellant admitted the officers to the home and told them his name was Steven Vanvalkenburgh. During the ensuing search, the deputies recovered a brown vinyl bag from a closet. The bag contained a quantity of white powder resembling cocaine,[1] and $10,000 in cash. Deputy Wenig decided to summon more officers to aid in the search, and asked appellant's permission to use the phone. Appellant was also given *Miranda* rights at that time. Deputy Wenig also told appellant that he expected to receive some phone calls back, and appellant also gave permission for the officer to answer the phone.

The telephone then rang and Deputy Hutton answered it. The caller asked if it was Steve and Deputy Hutton said yes. The caller then identified himself as Brad, and asked if "Steve" had the two ounces of cocaine they had discussed the other day. Hutton asked what price they had agreed upon and Brad told him $2,200. In response to questions from Hutton, Brad stated that he had the money and could be at appellant's home within 45 minutes. (In fact, Brad did arrive approximately 40 minutes later.) Appellant was in the room when the telephone conversation took place, but voiced no objection. Deputy Hutton conceded that the search warrant did not authorize interception of incoming phone calls.

In the court below, appellant moved unsuccessfully to quash the search warrant for lack of probable cause. The court also denied appellant's motion to suppress evidence of the telephone call intercepted by Deputy Hutton.

■ Appellant contends that Deputy Hutton's conduct in posing as appellant when answering the telephone was unlawful, and the contents of his telephone conversation with "Brad" should have been suppressed. Relying on *People* v. *Sandoval* (1966) 65 Cal.2d 303 [54 Cal.Rptr. 123, 419 P.2d 187], the Attorney General argues that the deputy acted properly and evidence obtained during the phone call was admissible.

---

[1] A subsequent analysis disclosed that the contents were 340 grams of cocaine.

In *Sandoval,* police officers obtained information from the district attorney with respect to the activities of one Oscar Jessie Coates. It was alleged that Coates "concealed heroin and burglary loot in his house, that the house served as a narcotics headquarters, and that at least one narcotics 'connection' normally contacted Coates there by telephone." (65 Cal.2d at p. 306.) Officers arrested Coates outside his home pursuant to an arrest warrant, then knocked on the door of the home. When a woman opened the door and stepped back, the officers entered, identified themselves and explained their presence. Inside the home they saw two other persons and, on the floor in plain view, a plastic bag containing narcotics. The officers arrested all the occupants, seized the narcotics, and proceeded to search the premises.

During the search, the telephone rang. One of the officers answered the telephone and a voice asked, "Is this Jessie," to which the officer replied, "Yes." The caller turned out to be the defendant, Sandoval, who was nervous about the fact that Coates had failed to show up to consummate a heroin transaction. The officer replied that he would be along in about 10 minutes. Based upon information provided by Coates, the officers proceeded to the location where Coates had arranged to meet Sandoval and approached a man who fit Sandoval's description. When Sandoval could not satisfactorily explain his presence at the location, the officers conducted a cursory search and found a condom containing heroin, after which they arrested Sandoval.

The Supreme Court, in an opinion by Justice Tobriner, rejected Sandoval's argument that the heroin found on his person was the unlawful "fruit" of information illegally obtained by telephone: "Because the officers were engaged in a lawful search [of Coates' home], and because the information supplied by the deputy district attorney rendered incoming telephone calls reasonably suspect, the officers could justifiably answer the telephone and conceal their identity from the caller in order to learn of possible unlawful activities. [Citation.] The officers thus lawfully learned that the caller intended to deliver narcotics to Coates, and we therefore conclude that the heroin found on defendant did not constitute the fruit of illegally obtained information." (*Id.,* at p. 308.)

Appellant distinguishes *Sandoval* on the basis that at the time Deputies Wenig and Hutton initiated their search of appellant's home, they "had no information that appellant used his home as a drug headquarters or that any 'connection' regularly contacted his home by telephone." Appellant relies on *People v. Harwood* (1977) 74 Cal.App.3d 460 [141 Cal.Rptr. 519], a case which distinguished *Sandoval.* In *Harwood,* the police arrested one Roger Brown, a suspected cocaine dealer, a block from his residence. The officers obtained consent to search Brown's apartment from his girl friend,

with whom he shared the apartment. The consent did not extend to answering telephone calls. The officers did not find any cocaine, either on Brown's person or in his apartment. They did, however, intercept an incoming telephone call from defendant Harwood relating to a narcotics transaction.

The *Harwood* court held that the officers had exceeded the scope of their consent to search by answering the incoming calls. (Brown's girl friend in fact testified that she tried to *prevent* the officers from answering the telephone.) The court distinguished *Sandoval*, stating: "In *Sandoval*, the search of a defendant's premises was based—not on consent—but on probable cause with information from the district attorney that rendered incoming telephone calls reasonably suspect as involving narcotic transactions. The *Sandoval* holding that the officers could justifiably answer the telephone is based on the dual premise that the search was based on probable cause *and* information imparted to the searching officers that incoming telephone calls were likely to constitute a part of illegal narcotic transactions being conducted by the occupant in this manner." (*Id.*, at p. 468.)

*Harwood* does not really aid appellant, since the factors upon which the *Harwood* court distinguished *Sandoval* are present here. The search of appellant's home was made pursuant to a warrant issued upon probable cause. Although the officers did not, as in *Sandoval*, have information prior to the search that appellant was selling drugs from his home, the intervening discovery of a large quantity of cocaine and $10,000 cash was enough to "render incoming calls reasonably suspect"[2] and justify the officers' interception of those calls.

We hold, therefore, that under *People* v. *Sandoval*, which governs this case, Deputy Hutton was justified in answering appellant's phone and concealing his identity, and appellant's motion to suppress evidence of the phone conversation was correctly denied.

The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied August 17, 1983, and appellant's petition for a hearing by the Supreme Court was denied September 29, 1983. Bird, C. J., was of the opinion that the petition should be granted.

---

[2]Deputy Hutton testified that he had often intercepted incoming calls at locations where he had gone to execute a search warrant, and in instances where narcotics were recovered at the premises, the incoming calls turned out to involve drug transactions 60 or 70 percent of the time.