[Crim. No. 42939. Second Dist., Div. Six. Oct. 14, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL BYRON WELLS, Defendant and Appellant.

498

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jonathan B. Steiner, Chief Assistant State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, William R. Pounders and Timothy E. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GILBERT, J.—Here, we conclude (1) that a court must advise a defendant of all his constitutional rights, including the right against self-incrimination,

prior to submission of his case on the preliminary hearing transcript, (2) that the M'Naghten test to determine a defendant's sanity as provided in Proposition 8 may not be applied retroactively, and (3) that a sentence for attempted murder may be enhanced by Penal Code section 12022.7.

*Facts*

Defendant Daniel Byron Wells lived with one Joanne Archer and Sherri Carriger, in the home of Carriger. During the evening of January 5, 1982, while all three of them were at home, Wells shot Carriger with a .22 caliber revolver. After shooting Carriger, he said, "My father told me . . . . I had to do it." As he left a few minutes later, he said he was going to kill himself.

Wells was charged with attempted murder, mayhem, and assault with a deadly weapon, and by means of force likely to produce great bodily injury. It was also alleged that he personally used a revolver within the meaning of Penal Code section 12022.5, and that he personally inflicted great bodily injury upon the victim within the meaning of Penal Code section 12022.7. Wells pled not guilty and not guilty by reason of insanity. Two psychiatrists were appointed pursuant to Penal Code sections 1026 and 1368 to determine Wells' competency to stand trial and to determine his sanity under the test set forth in *People* v. *Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318].[1]

On June 18, 1982, the day of trial, Wells waived his right to a jury trial and the case was submitted on the preliminary hearing transcript and certain police reports. While the judge was advising Wells of his constitutional rights in connection with the submission on the transcript, he said, "I don't have to advise you on the right against self-incrimination because you are not entering a plea." He also directed the same two psychiatrists who had earlier examined Wells to submit new opinions regarding his sanity under the test set forth under Penal Code section 25, subdivision (b), added by Proposition 8, enacted by the voters on June 8, 1982. Wells was convicted on all counts as charged and enhancement allegations were found to be true.

Wells next waived his right to a jury trial on the sanity issue. The court accepted both sets of reports from the doctors. In the first set of reports, filed on April 5, 1982, the doctors determined Wells to be not guilty by reason of insanity under the *Drew* standard. In the second set of reports

---

[1]As a *test for determining sanity in a criminal proceeding, People v. Drew, supra*, 22 Cal.3d at page 336, footnote 3, states: " 'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law. . . .' "

filed on June 29, 1982, the doctors found Wells to be sane under the M'Naghten standard set forth in Penal Code section 25, subdivision (b).[2] The court applied the M'Naghten test according to Proposition 8, rather than the *Drew* standard. Defense counsel presented no evidence on the insanity issue under the M'Naghten standard.

Wells was then sentenced to state prison for the midterm of seven years on count I, the offense of attempted murder, plus three years for the great bodily injury enhancement pursuant to Penal Code section 12022.7, for a total of ten years. The remaining counts were stayed pursuant to Penal Code section 654.

Wells makes three contentions on appeal: (1) the court erred by failing to advise Wells of his right against self-incrimination before he submitted the question of his guilt or innocence to the court on the preliminary hearing transcript; (2) the court erred because it failed to apply the *Drew* standard in deciding Wells's sanity, but instead retroactively applied the M'Naghten test contained in Penal Code section 25, subdivision (b), as part of Proposition 8; (3) the court erred when it enhanced Wells's sentence for attempted murder pursuant to Penal Code section 12022.7. Wells's first two contentions merit reversal of his conviction.

*Discussion*

I

■ The failure to advise Wells of his constitutional right against self-incrimination and to obtain a waiver of this right was error which compels reversal of his conviction. In *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086], the court held that where a defendant submits his case for decision on the transcript, the record must reflect that he has been advised of his constitutional rights. Needless to say, this includes the right against self-incrimination. Express waivers of the enumerated constitutional rights shall also appear on the record, irrespective of whether or not the submission is tantamount to a plea of guilty.

The People rely on those post-*Bunnell* cases which view *Bunnell* error in the context of prejudice. For example, in the case of *People* v. *Orduno*

---

[2]Penal Code section 25, subdivision (b), states: "In any criminal proceeding, including any juvenile court proceeding, in which a plea of not guilty by reason of insanity is entered, this defense shall be found by the trier of fact only when the accused person proves by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense."

(1978) 80 Cal.App.3d 738 [145 Cal.Rptr. 806], the court holds up *Bunnell* error to the redeeming light of *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. The court in *Orduno* reasoned that even when there is *Bunnell* error, it is not prejudicial when the submission on the transcript is a matter of trial convenience only and the issue of guilt or innocence is still contested by way of a vigorous argument by defense counsel. Concluding that it was not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error, the court affirmed his conviction.

The *Orduno* court relied on *People* v. *Ingram* (1976) 60 Cal.App.3d 722 [131 Cal.Rptr. 752]. In *Ingram,* the defendant submitted his case on the transcript but was not advised of his constitutional right against self-incrimination because he announced his intention to take the stand and deny he was the person who committed the crime for which he was charged. The court held that although technically there was *Bunnell* error, submission on the transcript was not tantamount to a plea of guilty. The court reasoned that it was Ingram's intention to take the stand and testify on his own behalf in order to reconcile the testimony of the prosecution witnesses. Thus, any advice on the privilege against self-incrimination would not have affected his decision to submit the matter on the transcript of the preliminary hearing.

The holdings in cases such as *Ingram* and *Orduno* fly in the face of *Bunnell* which explicitly erases the distinction between submissions that are tantamount to a plea of guilty and those in which defendants actively contest their guilt. Its holding applies to *all* cases in which defendants seek to submit their cases for a decision on the transcript. The *Bunnell* court held that "in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination." (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, 605.)

The court further explained that the rationale for its holding is to relieve trial courts of the burden of determining in advance of a submission "whether guilt is apparent, acknowledged, or contested" and "to give maximum assurance that defendants are fully aware of the significant rights that they surrender in any submission . . . ." (*Ibid.*) We agree with Wells that the *Bunnell* holding obviates the need to consider the prejudice issue at all.

We thus find the other strain of post-*Bunnell* cases to be more persuasive. In *People* v. *Davis* (1980) 103 Cal.App.3d 270 [163 Cal.Rptr. 22], the trial court failed to advise defendant of his right against self-incrimination when

he submitted his case on the transcript of the preliminary hearing. Though Davis's case was characterized by the court as a "slow plea" bargain, the court, relying on *Bunnell,* stated at page 275, that "[t]he face of the record must establish that defendant was expressly told of his right against self-incrimination and his express waiver of that right."

In *People* v. *Casarez* (1981) 124 Cal.App.3d 641 [177 Cal.Rptr. 451], defendant pled guilty to a charge of robbery and then submitted on the transcript of the preliminary hearing the allegation of his being armed with a firearm. The proper advisement and waiver of rights was taken when Casarez pled guilty to robbery, but there was no waiver of the right of self-incrimination when he submitted the question of the armed allegation on the preliminary hearing transcript. Basing its ruling on *Bunnell,* the *Casarez* court reversed the armed allegation even though defendant had been properly advised of his constitutional rights with respect to the guilty plea to the robbery charge. The *Casarez* court stated at page 651, "We are not permitted to use lack of prejudice as a basis for disregarding the omission of a waiver of any one of the three principal rights."

That counsel for Wells argued that the evidence was insufficient to sustain a conviction is of no consequence to our holding. No plea is so "slow" that any defense counsel worth his or her salt will not make an argument on behalf of the client.

We consider Wells's other contentions, despite our ruling regarding *Bunnell* error, in order to give guidance and direction to the trial court should this matter be retried. (*People* v. *Robertson* (1982) 33 Cal.3d 21, 56 [188 Cal.Rptr. 77, 655 P.2d 279].)

## II

We agree with Wells that the court erred by retroactively applying Penal Code section 25, subdivision (b), as part of Proposition 8 in deciding the issue of Wells's sanity. Wells's offense was committed on January 5, 1982. Psychiatric testing by the two psychiatrists was first ordered by the court on March 15, 1982. In the opinion of both doctors, Wells was not guilty by reason of insanity under the standard set forth in *People* v. *Drew, supra,* 22 Cal.3d 333. Proposition 8 took effect on June 9, 1982, the day after the election when it was approved by the voters. (Cal. Const., art. XVIII, § 4.)

In *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149], our Supreme Court held that "Proposition 8 applies only to prosecutions for crimes committed on or after its effective date" (*id.,* at

p. 258) because "the potential constitutional defect in Proposition 8 is that if construed to apply to crimes committed before its adoption, it may amount to an ex post facto law" (*id.*, at p. 259). Both the federal and state Constitutions prohibit such laws. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.) ■ The *Smith* court, citing *Weaver* v. *Graham* (1981) 450 U.S. 24, 29 [67 L.Ed.2d 17, 23, 101 S.Ct. 960], recognized that ex post facto violations do not occur if the change affected is merely procedural. The *Weaver* court also noted, however, that " 'it is the effect, not the form, of the law that determines whether it is *ex post facto.*' ([450 U.S.] at p. 31.)" (*People* v. *Smith, supra,* 34 Cal.3d at p. 260.)

The court in *Smith* then went on to observe that various provisions of Proposition 8 may be procedural or substantive. Provisions that are clearly procedural and would not be ex post facto as to prior crimes would, for example, include clauses giving victims a right to restitution, and to appear at sentencing and parole hearings. One of the provisions that may appear procedural in form but affect rights that are sufficiently substantial is the modification of the defense of insanity. The *Smith* court, at page 262, pointed out that a clause which has "the effect of impairing a defense . . . would appear to be barred by the ex post facto clause."

As the People concede, the express purpose of Penal Code section 25, subdivision (b), of Proposition 8 is to restate the insanity test so that it is more difficult to prove that a person is not guilty by reason of insanity. The court pointed out that inasmuch as the purpose of Proposition 8 is the deterrence of crime, "the voters must have intended the measure to apply only to offenses that *could* be deterred, i.e., that had not already been committed by the time Proposition 8 was adopted. [Fn. omitted.]" (*People* v. *Smith, supra,* 34 Cal.3d at pp. 258-259.) In the case at bench, the ex post facto doctrine does not apply to trivial matters but to a " ' 'vested and substantial right possessed at the time of the offense. [Citations.]' ' " (*In re Bray* (1979) 97 Cal.App.3d 506, 510 [158 Cal.Rptr. 745].)

Even by applying the *Drew* standard, the motivational basis for Proposition 8, to wit, the preservation of the public safety, is not undermined. As Wells points out, he could be kept in custody for 12 years, based on the upper term for attempted murder, plus the enhancement per Penal Code section 12022.7. In addition, if "by reason of a mental disease, defect, or disorder" Wells "represents a substantial danger of physical harm to others" within the meaning of Penal Code section 1026.5, subdivision (b)(1), he could be confined for an additional two years and then for successive periods of two years each if he were again found to present such danger.

## III

■ We disagree with Wells that the charge of attempted murder may not be enhanced under Penal Code section 12022.7.[3]

Our best guide is the plain meaning of the statute. In its third paragraph, it specifically excludes from its provisions murder, manslaughter, or a violation of section 451 or 452 of the Penal Code. In addition, paragraph one excludes those offenses in which infliction of great bodily harm injury is an element of the offense.

Case law holds that since the crime of attempted murder is a separate and distinct crime, it does not fall within the exceptions listed in Penal Code section 12022.7. (*People* v. *Young* (1981) 120 Cal.App.3d 683, 694-695 [175 Cal.Rptr. 1]; *People* v. *Gray* (1979) 91 Cal.App.3d 545, 551 [154 Cal.Rptr. 555]; *People* v. *Superior Court* (*Grilli*) (1978) 84 Cal.App.3d 506, 513, fn. 5 [148 Cal.Rptr. 740], disapproved on other grounds in *People* v. *Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 758 [191 Cal.Rptr. 1, 661 P.2d 1081].) Though Wells is dismayed that these cases have not reached their result by way of a rigorous statutory analysis, we find their holdings to be sound.

The People make a convincing argument when they point out that in the first paragraph of Penal Code section 12022.7, the statute specifically mentions that enhancements apply to persons who "in the commission or attempted commission of a felony" inflict great bodily injury on other persons. Yet, in the third paragraph, where exempted crimes are listed, there is no specific exemption for attempts. This evidences an intent of the Legislature not to exclude attempted murder from the provisions of the section. It is obvious that the offense of murder involves the ultimate in infliction of great bodily injury, whereas attempted murder might involve no bodily injury at all. Thus, the legislation is grounded in a reasonable legislative purpose.

---

[3]Penal Code section 12022.7 reads as follows: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted.

"As used in this section, great bodily injury means a significant or substantial physical injury.

"This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

While it is possible to conjure up anomalies wherein a defendant in a particular situation could be punished more severely for the unsuccessful attempt to commit a crime than he would be for its completed offense, that is not the case here.

The judgment is reversed.

Stone, P. J., and Abbe, J., concurred.