[Crim. No. 44456. Second Dist., Div. Four. July 24, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT THEODORE DRIESLEIN, Defendant and Appellant.

COUNSEL

Dennis A. Fischer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Mark Alan Hart and Shunji Asari, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McCLOSKY, J.—Defendant Robert Theodore Drieslein appeals from the "judgment of conviction and sentence rendered on April 13, 1983." By information, appellant was charged in count I of having cocaine in his possession for sale (Health & Saf. Code, § 11351), in count II of having marijuana in his possession for sale (Health & Saf. Code, § 11359) and in count III of having cocaine in his possession for sale (Health & Saf. Code, § 11351). After a trial by court sitting without a jury, appellant was convicted of all three counts. The trial court sentenced appellant on count I to state prison for three years with his sentence on the remaining two counts to run concurrently with that term.

FACTS

The matter was submitted for trial on the transcripts of the preliminary hearing and the motion to suppress evidence pursuant to Penal Code section 1538.5 (hereafter 1538.5 motion). Those transcripts contain the following facts:

On July 3, 1979, Los Angeles County Deputy Sheriffs Robert Esquivel and Severo Tolfa together with several members of the Downey Police Department served a search warrant at 13213 Premiere Avenue in Downey, California. That search warrant stated that the following property was to be searched for and if found seized: "Cocaine, a narcotic, and narcotic paraphernalia, consisting in part of and including, but not limited to: hypodermic syringes and needles, eyedroppers, spoons, cotton, milk sugar or other cutting agents, scales and other weighing devices, balloons, condoms, paper bindles, straws or tubes of any type, measuring devices, and containers of various types commonly associated with the storage or use of said narcotics, and articles of personal property tending to establish the identification of persons in control of the premises, including but not limited to, rent receipts, cancelled mail envelopes and keys."

Upon their entry into the house, the officers encountered one John Rios who was holding a plate containing a white powdery substance which was

later identified as cocaine. Mr. Rios was the only individual in the house. The officers proceeded to conduct a search of the house. They discovered two handguns, three to four ounces of cocaine and two hundred forty grams of marijuana.

During the course of the search while Officer Esquivel was in the kitchen, the phone rang and he "picked it up and pretended to be a friend of [appellant]. [¶] The person on the other side of the phone identified themselves to me as being [appellant]. I told them I was Johnny Joe. I made up some fictitious name and I told him I was there to buy some dope, however, nobody was in the house and I didn't know what to do. So I was going to wait around for him. [¶] The person who identified themselves as 'Robert,' he asked me where he knew me from and I said, 'Don't you recall we met at the'—and he inserted at that point, 'At the Racquetball courts?' And I said, 'Yeah.' So I went along with that. He said, 'How much money do you have?' I said, 'Approximately 600 bucks. How much will that buy me?' He said, 'We'll work that out, later. Why don't you come down here and meet me.' [¶] I asked him where he was at and what kind of car 'you'd be driving.' He said, 'You know the only car I got is a '73 blue VW.' He told me he would meet me at the corner of Otis and Tweedy, I believe, in South Gate and I told him I would be there in about 15 minutes."

Approximately 20 minutes later Deputies Esquivel and Tolfa met appellant at the appointed place. The deputies asked appellant whether he lived on Premiere to which he responded yes. The deputies then placed appellant under arrest. The remaining evidence is largely conflicting, but it is not disputed that the deputies then escorted appellant to his house at 10121 San Miguel where they found additional large quantities of cocaine.

Prior to the preliminary hearing defendant made a motion to dismiss in the municipal court, upon the grounds of prearrest delay. (*Rost* v. *Municipal Court* (1960) 184 Cal.App.2d 507, 512 [7 Cal.Rptr. 869, 85 A.L.R.2d 974].) That motion was denied. The preliminary hearing was then conducted and appellant was held to answer on all three counts. Appellant renewed his motion to dismiss in the superior court. The superior court judge reasoned that it was "without jurisdiction to further review the acts of the magistrate" and denied the motion.

Thereafter, appellant moved "to suppress evidence pursuant to Penal Code section 1538.5." One of the grounds of that motion was that the deputy unlawfully answered the telephone at the Premiere Street residence. The trial court denied that motion. Appellant then stipulated that the trial of the matter could be based upon the preliminary hearing and the 1538.5

motion transcripts. After briefly examining an additional witness the prosecution rested. The trial court then found appellant guilty of all three counts.

## CONTENTIONS

Appellant raises the following contentions on appeal: (1) "[His] convictions must be reversed because he was not advised of and did not waive his right against self-incrimination before the determination of his guilt or innocence was submitted to the court on the records of his preliminary hearing and motion to suppress evidence hearing." (2) "The trial court erred in refusing to suppress the fruits of sheriff deputies' interception of [his] telephone call during the execution of the search warrant for [his] Premiere Street residence."

Appellant also contends "the superior court erred in refusing to rule on the merits of [his] speedy trial motion on the ground it lacked jurisdiction to hear the matter following denial of the motion by the magistrate at [his] preliminary hearing." Respondent concedes that the trial court erred in this regard and that the matter must be remanded to the trial court. In his reply brief, appellant agrees that this error should result in a remand to the trial court rather than a dismissal of this action.

Both parties also agree that this concession renders moot appellant's contentions that: "Trial counsel's failure to proffer available, favorable evidence in support of appellant's motions to dismiss on due process/speedy trial grounds operated to deprive appellant of effective assistance of counsel." "At the hearing on appellant's speedy trial/due process motion in the municipal court, the magistrate erroneously sustained a hearsay objection to the contents of appellant's attorney's conversations with Deputy Sheriff Zabokartsky." Because of the concession of the parties we need not, and do not, discuss the merits of these contentions.

## DISCUSSION

### I

■ Appellant first contends that his "convictions must be reversed because he was not advised of and did not waive his right against self-incrimination before the determination of his guilt or innocence was submitted to the court on the records of his preliminary hearing and motion to suppress evidence hearing."

During the January 27, 1983, hearing appellant's counsel stipulated to having the trial held on the preliminary hearing and 1538.5 motion tran-

scripts. The trial court then made the following inquiry: "You waive further confrontation and cross-examination of witnesses and agree to submission in that matter, Mr. Drieslein?" to which appellant responded "Yes." The prosecution then briefly examined one witness and rested, at which time the trial court found appellant guilty of all three counts.

Thereafter at the February 25, 1983, hearing the following colloquy occurred between the deputy district attorney, the court, appellant and appellant's counsel:

"[DEPUTY DISTRICT ATTORNEY CARLSON]: Your Honor, I said that I thought they had a technical error in that we had taken testimony and then stipulated to the testimony taken. [¶] I would ask that there be a waiver of confrontation and cross-examination Nunc Pro Tunc at this time.

"[APPELLANT'S COUNSEL]: Fine.

"[DEPUTY DISTRICT ATTORNEY CARLSON]: Mr. Drieslein, you understand you could have called the witness back to the stand and have him repeat everything that he had already said, do you understand that, in the trial?

"THE DEFENDANT: Yes.

"[DEPUTY DISTRICT ATTORNEY CARLSON]: Including the transcript testimony that he gave. [¶] Do you understand that?

"THE DEFENDANT: Yes.

"[DEPUTY DISTRICT ATTORNEY CARLSON]: Do you waive and give up your right to confrontation and cross-examination in the trial itself, which we submitted on the transcript and previous testimony?

"THE DEFENDANT: Yes.

"[DEPUTY DISTRICT ATTORNEY CARLSON]: And you understand what it is where your attorney has the right—you have the right to have those witnesses present in court and to have them questioned again. [¶] Do you understand that?

"THE DEFENDANT: Yes."

In *In re Mosley* (1970) 1 Cal.3d 913, 926, footnote 10 [83 Cal.Rptr. 809, 464 P.2d 473], certiorari denied, *Mosley* v. *California* (1970) 400 U.S. 905

[27 L.Ed.2d 142, 91 S.Ct. 144], our Supreme Court determined that "the use of stipulations [including a stipulation to submit the case to trial on the transcript of a prior hearing] which, in the circumstances of the particular case, are *in fact* tantamount to a plea of guilty . . . must be accompanied by an affirmative showing on the record that the defendant waives his right to freedom from compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." (Italics in original.)

In *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086], the court explained that "the failure of some trial and appellate courts to recognize that submissions are trials even when conviction is certain apparently arise out of our use of the 'tantamount to a plea of guilty' language in *In re Mosley, supra,* 1 Cal.3d 913, 926, footnote 10, and our limited extension of the *Boykin-Tahl* requirements to only those submissions in which the defendant acknowledges that conviction was probable. That limitation, of course, followed from the fact that *Mosley* was compelled by *Boykin* v. *Alabama* [1969] 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], which involved only pleas of guilty. The procedural contexts in which the *Boykin* requirements were first enunciated and in which they have since been found either expressly applicable or appropriate though not compelled [citations] have tended to obscure the fact that the objectives of those requirements, i.e., assurance that the defendant is aware of his basic constitutional rights, that his waiver is both voluntary and intelligent, and that his decision to waive these rights is made with an understanding of the consequences thereof, are no less important when the defendant surrenders all or substantially all of those rights by a submission in which he contests his guilt by reserving the right to present additional evidence or to present legal argument in defense of the charge.

"The distinction heretofore established between submissions that are 'tantamount to a plea of guilty' and those in which the defendant actively contests his guilt has also unnecessarily burdened trial courts with the task of attempting to determine in advance of the acceptance of the submission whether guilt is apparent, acknowledged, or contested. We have concluded that in order to relieve trial courts of this burden and in order to give maximum assurance that defendants are fully aware of the significant rights that they surrender in any submission and of the possible consequences thereof, such defendants shall be fully advised of these rights and consequences and that the record shall reflect such advice, waivers, and acknowledgment by the defendant of his understanding of these consequences in all submissions." (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at pp. 604-605.)

In the case at bench, appellant was not advised of his right against self-incrimination and did not waive it prior to his submission of the matter on

the preliminary hearing and 1538.5 motion transcripts. Respondent urges that this error does not warrant a reversal, however, because "the rule in *Bunnell* is not constitutionally mandated" and therefore "the California Constitution mandates affirmance in the absence of a showing that a result more favorable to appellant would have been reasonably probable in the absence of error." In support of this assertion, respondent relies on *People* v. *Ingram* (1976) 60 Cal.App.3d 722 [131 Cal.Rptr. 752] and *People* v. *Orduno* (1978) 80 Cal.App.3d 738 [145 Cal.Rptr. 806], certiorari denied, *Orduno* v. *California* (1979) 439 U.S. 1074 [59 L.Ed.2d 41, 99 S.Ct. 849], both of which concluded that a conviction of a defendant who submitted his case on a preliminary hearing transcript without expressly waiving his rights must be reversed only when that submission was tantamount to a plea of guilty or when his failure to expressly waive his rights was prejudicial.

In *People* v. *Wells* (1983) 149 Cal.App.3d 497 [195 Cal.Rptr. 608], Division Six of this district explained: "The holdings in cases such as *Ingram* and *Orduno* fly in the face of *Bunnell* which explicitly erases the distinction between submissions that are tantamount to a plea of guilty and those in which defendants actively contest their guilt. Its holding applies to *all* cases in which defendants seek to submit their cases for a decision on the transcript. The *Bunnell* court held that 'in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination.' (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, 605.) [¶] The court further explained that the rationale for its holding is to relieve trial courts of the burden of determining in advance of a submission 'whether guilt is apparent, acknowledged, or contested' and 'to give maximum assurance that defendants are fully aware of the significant rights that they surrender in any submission . . . .' (*Ibid.*) We agree with [defendant] that the *Bunnell* holding obviates the need to consider the prejudice issue at all." (*People* v. *Wells, supra,* 149 Cal.App.3d at p. 502.)

Respondent recognizes *Wells* but urges that *Bunnell* erased the "tantamount to a plea of guilty" standard for trial courts only and not for appellate courts.

This novel argument is apparently premised upon one of the two reasons the *Bunnell* court gave for eliminating the "tantamount to a plea guilty" standard, i.e., to relieve trial courts of the burden of determining whether the defendant's submission of the case satisfied that standard. Respondent, however, ignores the second reason that the *Bunnell* court emphasized,

which was the elimination of that standard in order to give maximum assurance that defendants be aware of the significant rights that they surrender. This, of course, can only be accomplished by imposing the *Bunnell* rule upon the appellate courts as well as upon the trial courts.

We, therefore, adopt the reasoning of the *Wells* court and conclude that regardless of whether appellant's submission of the case to trial on the preliminary hearing and 1538.5 hearing transcripts was tantamount to a plea of guilty, the failure of defendant to knowingly and expressly waive his right against self-incrimination on the record requires a reversal. To rule otherwise would result in a de facto resurrection of the "tantamount to a plea of guilty" standard which was expressly rejected by the court in *Bunnell.*

We also reject respondent's attempt to distinguish *Bunnell* on the basis that in *Bunnell* the submission was on a preliminary hearing transcript only, while in the case at bench the submission was on the transcripts of both the preliminary hearing and the 1538.5 motion hearing. The California Supreme Court in *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452], explains that "[t]he privilege against self-incrimination is applicable not only to a frank admission of guilt but also to statements which could furnish a link in the chain of evidence needed for conviction. [Citation.] A defendant who by his stipulation permits the prosecution to prove its case without requiring the production of any evidence in court, other than the transcript of a prior hearing, furnishes far more than a mere link in the chain of evidence." (*Id.,* at p. 652.)

While in *Levey* the case was submitted on a preliminary hearing transcript, the court's reasoning is expressly made applicable to a defendant's submission to trial on the transcript of any prior hearing. We interpret this to include the transcript of a 1538.5 motion hearing and therefore reject respondent's assertion to the contrary. Accordingly, we conclude that reversal is required because the trial court erred in failing to obtain appellant's express waiver of his right against self-incrimination on the record. For the guidance of the trial court upon any retrial, we deal with appellant's remaining contention.

## II

That contention is that "[t]he trial court erred in refusing to suppress the fruits of sheriff deputies' interception of [his] phone call during the execution of the search warrant for [his] Premiere Street residence." Appellant first urges that "the trial court erred in denying the motion to

suppress based upon the retroactive application of the truth-in-evidence provision of the California Constitution (art. I, § 28(d))."

The record reflects that the trial court based its ruling at least in part on the applicability of Proposition 8 (Cal. Const., art. I, § 28). Because the crime with which appellant was charged occurred prior to the June 9, 1982, effective date of Proposition 8, it does not apply to the case at bench. (*People* v. *Smith* (1983) 34 Cal.3d 251, 258 [193 Cal.Rptr. 692, 667 P.2d 149].) The trial court therefore erred in ruling to the contrary. Respondent understandably relies on pre-Proposition 8 law to support the trial court's denial of defendant's 1538.5 motion.

As the facts regarding Deputy Esquivel's interception of the telephone call are not conflicting, the determination of whether that interception was lawful is a question of law. (*People* v. *Superior Court* (1970) 3 Cal.App.3d 476, 488 [83 Cal.Rptr. 771].) ■ Since an interception of telephone calls was not delineated in the search warrant the officers were executing at the time the telephone call was intercepted, it was the People's burden to justify that interception as a warrantless seizure. (See *People* v. *Murray* (1978) 77 Cal.App.3d 305, 311 [143 Cal.Rptr. 502].)

■ " 'When officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently, as a result of the officer's efforts.' (*Skelton* v. *Superior Court* [1969] 1 Cal.3d 144, 157; . . .) Nonetheless, police officers are foreclosed from seizing items indiscriminately; they must show a nexus between the item to be seized and criminal behavior. [Citations.]" (*People* v. *Albritton* (1982) 138 Cal.App.3d 79, 86 [187 Cal.Rptr. 652].) Additionally, "the seizure of items not listed in the warrant is also subject to the requirement that the contraband not listed in the warrant be discovered *inadvertently* and not as a result of using the warrant as a pretext to gain entry for the purpose of conducting a *general exploratory search* for unlisted property." (*People* v. *Albritton, supra,* 138 Cal.App.3d at p. 87.)

In *People* v. *Sandoval* (1966) 65 Cal.2d 303 [54 Cal.Rptr. 123, 419 P.2d 187], certiorari denied, *Sandoval* v. *California* (1967) 386 U.S. 948 [172 L.Ed.2d 878, 87 S.Ct. 985], police officers were lawfully searching a house for narcotics when the defendant in that case telephoned the house and his call was intercepted by an officer. As a result of a ruse employed by that officer, the defendant implicated himself in a drug transaction and was arrested. The defendant contended that the officer unlawfully intercepted his

telephone call. Prior to their search a deputy district attorney had informed the officers that at least one narcotics connection had contacted the resident of that house by telephone. The Supreme Court found that the search was justified because the officers had observed narcotics on the premises and ruled that the interception was legal, reasoning that "[b]ecause the officers were engaged in a lawful search, and because the information supplied by the deputy district attorney rendered incoming telephone calls reasonably suspect, the officers could justifiably answer the telephone and conceal their identity from the caller in order to learn of possible unlawful activities." (*Id.*, at p. 308.)

Appellant, relying on our decision in *People* v. *Harwood* (1977) 74 Cal.App.3d 460 [141 Cal.Rptr. 519], urges that *Sandoval* is not controlling. In *Harwood*, one Roger Brown was arrested one block from his apartment for selling cocaine. The arresting officers obtained the consent to search that apartment of an individual sharing that apartment with Mr. Brown. At a point when the search of the apartment was completed and no cocaine was found, the telephone rang. The officer answered it and identified himself as a friend of Mr. Brown. The caller, who was later identified as defendant, responded that he had some cocaine to sell and described a meeting spot. We concluded that the officer's interception of the telephone call was not within the scope of the consent to search the apartment and therefore determined that that interception was unlawful. We distinguished *Sandoval* by explaining that "[i]n *Sandoval,* the search of a defendant's premises was based—not on consent—but on probable cause with information from the district attorney that rendered incoming telephone calls reasonably suspect as involving narcotic transactions. The *Sandoval* holding that the officers could justifiably answer the telephone was based on the dual premise that the search was based on probable cause *and* information imparted to the searching officers that incoming telephone calls were likely to constitute a part of illegal narcotic transactions being conducted by the occupant in this manner. *Sandoval* cannot be construed as a holding that every right to make a premises search—whether based on probable cause or consent—includes the right to intercept incoming telephone calls." (*People* v. *Harwood, supra,* 74 Cal.App.3d at p. 468.)

In the case at bench, respondent seeks to distinguish *Harwood* as follows: "Here, the search was conducted not merely on probable cause, but pursuant to a search warrant. The warrant was based on an affidavit which not only indicated appellant was keeping and selling cocaine at the residence but also: '[t]he informant added that at the time Robert was talking with an unknown party on the telephone and was negotiating a deal for six or seven ounces of cocaine for approximately $1,900.00 each and to be delivered

during the evening hours of the 3rd or before noon on the 4th.' [¶] Recovered in the search were approximately five ounces of cocaine and 236 grams of marijuana.''

Respondent urges that these facts bring this case within *Sandoval* as interpreted by Division Five of this court in *People* v. *Vanvalkenburgh* (1983) 145 Cal.App.3d 163 [193 Cal.Rptr. 274].

In *Vanvalkenburgh,* officers conducted a search of the defendant's house pursuant to a warrant. During the course of the search, the officers discovered a large quantity of white powder resembling cocaine and $10,000 in cash. An officer obtained defendant's consent to answer the telephone in order to receive a call that officer was expecting. Thereafter the telephone rang, the officer answered, and the caller inquired as to whether the defendant had two ounces of cocaine for sale. Defendant urged that the officer's interception of the call was illegal. The *Vanvalkenburgh* court concluded that that search was legal and distinguished *Harwood* upon the grounds that the search was conducted pursuant to a warrant and although the officer did not have prior information that defendant was selling drugs from his house, "the intervening discovery of a large quantity of cocaine and $10,000 cash was enough to 'render incoming calls reasonably suspect' and justify the officers' interception of those calls." (*People* v. *Vanvalkenburgh, supra,* 145 Cal.App.3d at p. 167, fn. omitted.)

 The record in the case at bench contains facts which could objectively justify the officer's interception of the telephone call, e.g., the affidavit of Officer Zabokartsky supporting the issuance of the search warrant which indicates defendant used his telephone in drug transactions and the large amount of drugs and cash found in the premises. But to justify that interception of the telephone call more was required. There must be an evidentiary showing that the searching officer who intercepted the telephone call additionally harbored a subjective belief that that telephone was being used to conduct a narcotics business or other criminal activity. (*Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 542 [102 Cal.Rptr. 729, 498 P.2d 977]; *People* v. *Superior Court* (1972) 7 Cal.3d 186, 198 [101 Cal.Rptr. 837, 496 P.2d 1205].) While in his testimony Officer Esquivel never articulated his belief or suspicion that the subject telephone call had a nexus to criminal activity, his subjective belief in that regard may be plainly inferred from the evidence that when he intercepted the telephone call he gave appellant a false name and told him he was there to buy some dope. This was sufficient to justify the warrantless interception of the telephone call.

The judgment is reversed. The matter is remanded to the trial court for it to rule on appellant's "motion to dismiss for prejudicial lack of prosecu-

tion" before any retrial.

Woods, P. J., and Arguelles, J., concurred.